## CHICAGO, BURLINGTON, AND QUINCY RAILROAD COMPANY *v.* IOWA.

1. Railroad companies are carriers for hire. Engaged in a public employment affecting the public interest, they are, unless protected by their charters, subject to legislative control as to their rates of fare and freight.

2. The Burlington and Missouri River Railroad Company has, within the scope of the authority conferred by its charter, and subject to the limitations thereby imposed, the power of a natural person to make contracts in reference to its business. Like such person, it, or its assignee, the plaintiff in error, is, under the same circumstances, subject at all times to such laws as the general assembly of the State may from time to time enact.

3. A power of government which actually exists is not lost by non-user. The fact, therefore, that the power of regulating the maximum rates of fare and freight was not exercised for more than twenty years after the incorporation of that company is unimportant. Nor does it affect the case, that, before the power was exercised, the company had pledged its income as security for the payment of debts incurred, and had leased its road to a tenant that relied upon the earnings for the means of paying the stipulated rent. It could neither grant nor pledge more than it had, and its pledgee or tenant took the property subject to the exercise by the State of the same powers of regulation which might have been exercised over the company itself.

4. The act of the general assembly of the State of Iowa, entitled "An Act to establish reasonable maximum rates of charges for the transportation of freight and passengers on the different roads of this State," approved March 23, 1874, is not in conflict with sect 4, art. 1, of the Constitution of Iowa, which provides that "all laws of a general nature shall have a uniform operation," and that "the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens;" nor is it a regulation of interstate commerce.

APPEAL from the Circuit Court of the United States for the District of Iowa.

This bill was filed by the Chicago, Burlington, and Quincy Railroad Company, a corporation created by the laws of Illinois, for an injunction restraining the Attorney-General of the State of Iowa from prosecuting suits against it or its officers, under the provisions of an act passed by the legislature of Iowa, entitled " An Act to establish reasonable maximum rates of charges for the transportation of freight and passengers on the different railroads of this State," approved March 23, 1874.

The complainant is the lessee of the Burlington and Missouri River Railroad in the State of Iowa; the two roads being

connected by a bridge which crosses the Mississippi River at Burlington, thus making a continuous and uninterrupted line of railroad from Chicago, Ill., to Plattsmouth, on the Missouri River, Iowa.

In constructing its road, the Burlington and Missouri River Railroad Company executed sundry mortgages upon its property, &c., which are still outstanding.

On Dec. 31, 1872, that company leased its road and branches, with all their fixtures, appurtenances, and equipments of every kind, and all their franchises and privileges, to the complainant in perpetuity, and delivered possession thereof.

By the lease, the complainant covenanted to take immediate possession of the demised premises, and to keep the railroad and branches equipped, and maintain and operate them in such manner as to furnish reasonable accommodations to the public, and to pay all taxes and assessments that might be lawfully levied, charged, or assessed on the roads and property, or any part thereof; to assume all leases, contracts, bonds, and other obligations of whatever kind; to pay and discharge all debts and liabilities of every nature, both principal and interest; to make to the stockholders of the Burlington and Missouri River Railroad, and branches, the same amount of dividends per share that it should make to its own stockholders, and to grant and secure to them the same benefits and emoluments, of every description, that its own stockholders might receive, have, or become entitled to.

The indebtedness, over and above the expenses of keeping the roads in repair and operation, which the complainant became liable to pay for the leased roads, amounted to $7,353,950; and the stock of said roads, upon which it obligated itself to pay dividends, amounts to the further sum of $6,532,552.76; and for the means of payment it relies upon the earnings of the roads.

The complainant claims, that, under the provisions of the laws of Iowa, which existed and were in force when the Burlington and Missouri River Railroad Company was organized, and when the money with which its road and branches were built and equipped, was borrowed, and the mortgages to secure the payment thereof were executed, the company had the right to fix, determine, and establish the tariff of rates, for the trans-

portation of freight and passengers over its road and branches, and that it has always heretofore exercised that right, without question of its power and authority to do so; that this right, power, and privilege were, by the lease aforesaid, assigned, set over, and transferred to the complainant, and that it has, ever since the lease, exercised the power, without question of its right to do so; that, in the exercise of such power, it has fixed, and adjusted the tariff of charges for the transportation of persons and property over the road and branches, with a view to furnishing to the country the greatest facilities of transportation, and at the lowest rates, compatible with the duty of the complainant to keep the roads in good condition and repair, and provided with the necessary depots, freight-houses, machine-shops, engines, cars, &c., to meet the demands of business, and to provide the means of defraying the expenses of operating the roads, paying the interest upon the indebtedness, and earning reasonable dividends for the stockholders; and that the earnings of the roads, under the operation of the tariff so established, have been barely adequate, under careful and economical management, to such purposes; and that these ends cannot be attained if the complainant shall be deprived of its just and lawful right to fix its tariff of charges, and be compelled to conform to the act in question.

It is further charged, that the persons who loaned the money with which the road and branches were built and equipped, and to secure the repayment of which the bonds and mortgages were executed, did so in reliance upon the earnings of the roads to refund and repay the money so loaned, and in the full confidence and belief that the right of the company to fix and control the tariff of charges for transportation would never be denied or interfered with.

The complainant insists that the act referred to impairs the obligation of the contract between the State and the Burlington and Missouri River Railroad Company, that between that company and its stock and bond holders, and that between the Burlington and Missouri River Railroad Company and the complainant; and that it is also a violation of that provision of the Constitution of the United States which gives to Congress the power to regulate commerce among the several States.

It also charges that by the said act, and the pretended classification of railroads under it, it is required to transport passengers and property for less compensation than other railroad companies in the State are allowed to charge and receive for transporting persons and property, for equal distances, although the labor, cost, and expense of transportation over the road of complainant are full as much per mile as the labor, cost, and expense of like transportation over the roads which are allowed greater compensation therefor, and that said act is therefore in conflict with and a violation of the sixth section of art. 1 of the Constitution of Iowa, which provides that " all laws of a general nature shall have a uniform operation, and that the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

The answer, so far as material to the present purpose, admits most of the allegations of the bill, but denies that the Burlington and Missouri River Railroad Company, either by the charter or the laws of Iowa, had the exclusive right and power to fix its rates of fare, and denies that any attempt is to be made to enforce the law, so far as regards inter-state commerce.

On hearing, the court rendered a decree denying the injunction, and dismissing the bill; from which decree complainant appealed.

The errors complained of are, —

1. The refusal of the court to grant the injunction.

2. The decree dismissing the bill.

*Mr. O. H. Browning* and *Mr. F. T. Frelinghuysen* for the appellant.

1. The charter of the Burlington and Missouri River Railroad Company is a contract between the company and Iowa, entitled to the protection of the Constitution of the United States, and its obligation cannot be impaired by any act passed by the general assembly of that State. *Miller* v. *State,* 15 Wall. 478; *Pacific Railroad Co.* v. *Maguire,* 20 id. 36 ; *Railroad Company* v. *Maryland,* 21 id. 456.

2. Under its charter, and the Constitution and laws of Iowa, which existed at the time of its organization, that company had the right to fix the rates of compensation for the transportation

of persons and property over its road; and this right, a material and valuable part of its contract, the State can neither take away nor impair. Revision of the Laws of Iowa, 1860, p. 969; chap. 43 of the Iowa Code, 1851, sects. 673–678, 680; Pierce on Am. Railroad Law, 461; *Miller* v. *State, supra; Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Railroad Company* v. *Maryland, supra; Boyle* v. *Phila. & Reading Railroad Co.*, 54 Penn. 312; *Penn. Railroad Co.* v. *Sly*, 65 Penn. 207; Cooley on Const. Lim. 279, and cases there referred to; *The People* v. *Marshall*, 6 Ill. 684; *Case of the State Freight Tax*, 15 Wall. 232; Ang. & Am. on Corp., sect. 111; *The People* v. *The Manhattan Co.*, 9 Wend. 393; Ang. on Carriers, sect. 124; *The Citizens' Bank* v. *Nantucket Steamboat Co.*, 2 Story, C. C. 35; *Brown* v. *State of Maryland*, 12 Wheat. 419; *License Cases*, 5 How. 574; Iowa Code, 1851, sects. 729, 734, 736, 738, 750; *O. & M. Railroad Co.* v. *McClelland*, 25 Ill. 141.

3. The right which the company had under its charter, and the laws which existed when it was organized, to receive compensation for services, and fix the rates of such compensation, by making its own contracts therefor, has never been forfeited or surrendered, but is still an existing right. 11 Stat. 9; Revision of Laws of Iowa, 1860, pp. 215, 216, 999, 1000; 2 Pars. on Contr. 494, 499; *Parkhurst* v. *Smith*, Willes, 332; Session Acts of Iowa, 1862, 197; id. 1870, 106, 179; Iowa Code, 1873, 239; Session Laws of Iowa, 1868, 13, 66, 68, 167; *The People* v. *Marshall, supra;* Session Acts of Iowa, 1864, 44, sects. 1, 2; Iowa Code, 1851, c. 43; *B. & M. R. Railroad Co.* v. *White*, 5 Iowa, 411; *Mayor, &c.* v. *Second Ave. Railroad Co.*, 32 N. Y. 261; *Mayor, &c.* v. *Third Ave. Railroad Co.*, 33 id. 42.

4. The act of the Iowa legislature, entitled "An Act to establish reasonable maximum rates of charges for the transportation of freights and passengers on the different railroads of this State," approved March 23, 1874, impairs the obligation of the charter contract; of the contract between the company and its stockholders, and bondholders and mortgagees; and the contract between the complainant company and the Burlington and Missouri River Railroad Company; and is therefore unconstitutional, null, and void. Session Acts of Iowa, 1874, p. 61; *Stewart* v. *Laird*, 1 Cranch, 299; *Martin* v. *Hunter's Lessee*,

1 Wheat. 351; *Cohens* v. *Virginia*, 6 id. 264; *Bank of United States* v. *Halstead*, 10 id. 63; *Ogden* v. *Saunders*, 12 id. 290; *Surgett* v. *Lapice*, 8 How. 68; *Gibbons* v. *Ogden*, 9 Wheat. 1; *City of New York* v. *Miln*, 11 Pet. 157, 158; *Ohio Life and Trust Co.* v. *Debolt*, 16 How. 432; *Havemeyer* v. *Iowa County*, 3 Wall. 294; *Thomson* v. *Lee County*, id. 327; *Larned* v. *Burlington*, 4 id. 275; *The City* v. *Lamson*, 9 id. 477; *Olcott* v. *The Supervisors*, 16 id. 678; *Supervisors* v. *United States*, 18 id. 71.

5. The act of the Iowa legislature, now in question, is in conflict with the Fourteenth Amendment to the Constitution of the United States, which provides that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the law." *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Railroad Company* v. *Maryland*, 21 id. 456; *License Cases, supra; Brown* v. *State of Maryland*, 12 Wheat. 419; *Railroad Commissioners* v. *P. & O. C. Railroad Co.*, 63 Mo. 276; 1 Black. Com. 138; 2 Kent, Com. 320; *Wynehamer* v. *The People*, 13 N. Y. 398, 433; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166.

6. The act is in conflict with the provision of the Constitution of the United States which gives to Congress the power to regulate commerce among the several States. Congress has exercised that power by the statute of June 15, 1866. 14 Stat. 66. Under it, the authority of the appellant to transport from State to State, and receive compensation therefor, includes *ex necessatati rei* the right and power to fix such rates of transportation.

7. The act, so far as it prescribes the rates of compensation for the transportation of persons and property, is not a police regulation, and cannot be maintained under the police power of the State. *License Cases, supra;* 4 Black. Com. 162; 2 Bouv. Law Dic. 348; *Railroad Company* v. *Fuller*, 17 Wall. 560; *State* v. *Noyes*, 47 Me. 189; Cooley's Const. Lim. 574 *et seq.; Benson* v. *The Mayor, &c.*, 10 Barb. 345; *P. W. & B. Railroad Co.* v. *Bower*, Am. Law Reg., March, 1874, p. 174; *T. W. & W. Railway Co.* v. *Jacksonville*, 67 Ill. 40.

8. The act is in conflict with and a violation of sect. 6

art. 1, of the Constitution of Iowa, which provides that "all laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

*Mr. M. E. Cutts,* Attorney-General of Iowa, *contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

Railroad companies are carriers for hire. They are incorporated as such, and given extraordinary powers, in order that they may the better serve the public in that capacity. They are, therefore, engaged in a public employment affecting the public interest, and, under the decision in *Munn* v. *Illinois, supra,* p. 113, subject to legislative control as to their rates of fare and freight, unless protected by their charters.

The Burlington and Missouri River Railroad Company, the benefit of whose charter the Chicago, Burlington, and Quincy Railroad Company now claims, was organized under the general corporation law of Iowa, with power to contract, in reference to its business, the same as private individuals, and to establish by-laws and make all rules and regulations deemed expedient in relation to its affairs, but being subject, nevertheless, at all times to such rules and regulations as the general assembly of Iowa might from time to time enact and provide. This is, in substance, its charter, and to that extent it is protected as by a contract; for it is now too late to contend that the charter of a corporation is not a contract within the meaning of that clause in the Constitution of the United States which prohibits a State from passing any law impairing the obligation of a contract. Whatever is granted is secured subject only to the limitations and reservations in the charter or in the laws or constitutions which govern it.

This company, in the transactions of its business, has the same rights, and is subject to the same control, as private individuals under the same circumstances. It must carry when called upon to do so, and can charge only a reasonable sum for the carriage. In the absence of any legislative regulation upon the subject, the courts must decide for it, as they do for private

persons, when controversies arise, what is reasonable. But when the legislature steps in and prescribes a maximum of charge, it operates upon this corporation the same as it does upon individuals engaged in a similar business. It was within the power of the company to call upon the legislature to fix permanently this limit, and make it a part of the charter; and, if it was refused, to abstain from building the road and establishing the contemplated business. If that had been done, the charter might have presented a contract against future legislative interference. But it was not; and the company invested its capital, relying upon the good faith of the people and the wisdom and impartiality of legislators for protection against wrong under the form of legislative regulation.

It is a matter of no importance that the power of regulation now under consideration was not exercised for more than twenty years after this company was organized. A power of government which actually exists is not lost by non-user. A good government never puts forth its extraordinary powers, except under circumstances which require it. That government is the best which, while performing all its duties, interferes the least with the lawful pursuits of its people.

In 1691, during the third year of the reign of William and Mary, Parliament provided for the regulation of the rates of charges by common carriers. This statute remained in force, with some amendment, until 1827, when it was repealed, and it has never been re-enacted. No one supposes that the power to restore its provisions has been lost. A change of circumstances seemed to render such a regulation no longer necessary, and it was abandoned for the time. The power was not surrendered. That remains for future exercise, when required. So here, the power of regulation existed from the beginning, but it was not exercised until in the judgment of the body politic the condition of things was such as to render it necessary for the common good.

Neither does it affect the case that before the power was exercised the company had pledged its income as security for the payment of debts incurred, and had leased its road to a tenant that relied upon the earnings for the means of paying the agreed rent. The company could not grant or pledge more

than it had to give.   After the pledge and after the lease the property remained within the jurisdiction of the State, and continued subject to the same governmental powers that existed before.

The objection that the statute complained of is void because it amounts to a regulation of commerce among the States, has been sufficiently considered in the case of *Munn* v. *Illinois*. This road, like the warehouse in that case, is situated within the limits of a single State.   Its business is carried on there, and its regulation is a matter of domestic concern.   It is employed in State as well as in inter-state commerce, and, until Congress acts, the State must be permitted to adopt such rules and regulations as may be necessary for the promotion of the general welfare of the people within its own jurisdiction, even though in so doing those without may be indirectly affected.

It remains only to consider whether the statute is in conflict with sect. 4, art. 1, of the Constitution of Iowa, which provides that " all laws of a general nature shall have a uniform operation," and that " the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

The statute divides the railroads of the State into classes, according to business, and establishes a maximum of rates for each of the classes.   It operates uniformly on each class, and this is all the Constitution requires.   The Supreme Court of the State, in the case of *McAunich* v. *M. & M. Railroad Co.*, 20 Iowa, 343, in speaking of legislation as to classes, said, " These laws are general and uniform, not because they operate upon every person in the State, for they do not, but because every person who is brought within the relation and circumstances provided for is affected by the law.   They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform is not affected by the number of persons within the scope of their operation."   This act does not grant to any railroad company privileges or immunities which, upon the same terms, do not equally belong to every other railroad company.   Whenever a

company comes into any class, it has all the "privileges and immunities" that have been granted by the statute to any other company in that class.

It is very clear that a uniform rate of charges for all railroad companies in the State might operate unjustly upon some. It was proper, therefore, to provide in some way for an adaptation of the rates to the circumstances of the different roads; and the general assembly, in the exercise of its legislative discretion, has seen fit to do this by a system of classification. Whether this was the best that could have been done is not for us to decide. Our province is only to determine whether it could be done at all, and under any circumstances. If it could, the legislature must decide for itself, subject to no control from us, whether the common good requires that it should be done.                     *Decree affirmed.*

MR. JUSTICE FIELD and MR. JUSTICE STRONG dissented.