GRAY ET AL V. MOUNT ET AL.

1. **Constitutional Law:** STATUTES NOT EMBRACED IN CODE: SWAMP
LAND FUND.   Statutes which are public and special, whose subjects
are not revised in the Code, are not repealed unless their provisions are
repugnant to the enactments of the Code, and in this class are included
the statutes upon the subjects of Swamp Lands and the Swamp Land
Fund.

2. **Swamp Lands:** APPROPRIATION OF FUND: SPECIAL ELECTION.   It is
competent for the board of supervisors to submit the question of the
appropriation of the Swamp Land Fund to the electors at a special
election.

3. ———: ———: BOARD OF SUPERVISORS.   The board of supervisors
alone have authority to submit the proposition for appropriating the
Swamp Land Fund to the erection of a county high school building at a
certain place.

4. **Election:** PROPOSITION FOR OUTLAY OF MONEY.   In the submission to
the electors of a proposition for the outlay of money, two distinct objects,
each calling for a certain specified amount of funds, cannot be included
in one proposition, so that the voter shall be unable to vote for the one
and against the other.

*Appeal from Guthrie Circuit Court.*

WEDNESDAY, APRIL 17.

IN CHANCERY.   The petition alleges, as grounds of relief:

1.   The county of Guthrie holds $21,388.94, proceeds of
swamp lands heretofore sold by the county and known as the
Swamp Land Fund.

2.   That on the 4th day of January, 1876, the board of
supervisors of the county, constituted of defendants as mem-
bers, upon a petition of certain legal voters, ordered a special
election to be held in the several voting precincts of the
county, to be held on the 14th of February, 1876, at which
the following proposition was submitted to the electors: " Shall
the Swamp Land Fund of Guthrie county, Iowa, be devoted
by the board of supervisors of said county to the erection of a
court-house at Guthrie Centre, in said county, and a county
high school in the town of Panora, in said county, in the pro-

portion of two-thirds thereof to the erection of said courthouse and one-third to the erection of said county high school building?"

3. At a special election held pursuant to the order of the board of supervisors the proposition submitted to the electors received the affirmative vote of a majority of the votes cast.

4. It is charged in the petition that the proceedings are contrary to law, and the proposition to devote the Swamp Land Fund to the two separate purposes indicated in the submission was submitted in that form in order to unite the friends of each project, when neither object alone would have been adopted by the electors. It is therefore claimed that petitioners and other voters have had no opportunity fairly to exercise their right of voting for one of the objects and against the other.

5. At the general October election for 1875 a proposition was submitted to the electors of the county to authorize the erection, at Guthrie Center, of a court-house at the cost of $25,000, and was rejected.

6. At the general election of 1874 a proposition was adopted by the electors establishing a high school at Panora and appropriating thereto the old court-house building.

7. The petition prays that the defendants be restrained from appropriating the Swamp Land Fund in the manner provided by the vote of the electors upon this joint proposition.

Upon this petition the Judge of the Circuit Court allowed an injunction restraining the appropriation of the Swamp Land Fund to the purpose of erecting a court-house, the probable cost of which shall exceed $5,000, until a proposition therefor shall have been submitted to the legal voters of the county and adopted. No injunction further restraining the action of defendants was allowed.

The defendants answered the petition, substantially admitting the facts alleged in the petition as above set out.

At the following term of court the injunction allowed by the Judge was dissolved, and thereupon plaintiffs appeal.

*Wright, Gatch & Wright* and *C. Haden*, for appellants.

*C. C. Cole*, for appellees.

Beck, J.—I.  It is first insisted by plaintiffs that the submission of the proposition to the voters and their adoption thereof are illegal and void, because the election at which the popular will was expressed was special.  Relying upon Code, § 303, par. 24, they contend that questions of this kind can be submitted to the people only at a general election.  This provision prescribes that the supervisors shall not order the construction of any public building exceeding in cost $5,000, until a proposition therefor shall have been submitted to and adopted by the voters at a general election.

*1. CONSTITUTIONAL law: statutes not embraced in code: swamp land fund.*

Under enactments relating to the swamp lands of the State and the appropriation of their proceeds by the counties, it is provided that, upon an affirmative vote of the people, at any *general or special* election, upon a proposition submitted to them, the lands or proceeds arising therefrom may be devoted to the erection of county buildings and buildings devoted to the purposes of education.  Revision of 1860, Chap. 47, title 7, §§ 925, 957, 986, and §§ 250, 251, Chap. 77, Acts Ninth Gen'l Assembly, and Chap. 135, Acts Thirteenth Gen'l Assembly.  Counsel for plaintiffs maintain that these provisions are superseded and repealed by the Code.  This position presents the only disputable question involved in this point of the case.  If these statutes are in force the vote of the people upon the subject of the appropriation of the Swamp Land Fund may be had at a special election; if they are repealed, such vote must be at a general election.

We must inquire, then, whether these statutes are in force.  They are not revised or incorporated in the Code.  They are public in their nature and special in their provisions, for they apply to a special subject and none other.  Their provisions, so far as the appropriation of the Swamp Land Fund is concerned, are applicable to no other fund or public moneys.  They are special statutes applicable to the acquisition, dispo-

sition and sale of swamp lands, and the appropriation of their proceeds by the counties; they are public, because their subjects are public property and public funds. They are, then, public and special statutes.

Code, § 47, provides that "all public and general statutes, passed prior to the present session of the General Assembly, and all *public and special acts*, the subjects whereof are revised in this Code, or which are repugnant to the provisions thereof, are hereby repealed."

The statutes in question, being public and special, and the subjects thereof not being revised in the Code, as we have seen, are not repealed, unless their provisions are repugnant to enactments in the Code. But no such repugnancy exists, for there is not one word upon the subject of the appropriation of Swamp Land Funds found in the Code.

The report of the commissioners for the revision of the statutes, whose work resulted in the preparation of the Code, 2. SWAMP lands : appropriation of funds: special election. expressly states that the statutes upon the subject of swamp lands and the Swamp Land Fund (Rev., Title 7, Chap. 47), were considered by them as local and obsolete, and were, therefore, not revised and incorporated in the Code. We reach the conclusion, therefore, that it was competent for the supervisors to submit the question of the appropriation of the Swamp Land Fund to the voters at a special election.

II. Plaintiffs insist that it was not competent for the supervisors to submit the question of the location of the 3. —: —: board of supervisors. county high school, or the question of the appropriation of the Swamp Land Fund to building a school-house to the voters of the county. They maintain that such power is conferred exclusively upon the trustees of the high school. But it is not claimed that these trustees are clothed with the power of submitting questions of taxation or of appropriation of funds to the voters. While they may select the site of the school-house and demand and accept, or refuse, funds appropriated by the vote of the people to the purposes of the high school, this by no means requires us to hold that the submission of all questions upon which the

people are authorized to vote, touching these matters, cannot be made to the electors by the supervisors. Indeed, there is no other way pointed out by which the will of the voters may be ascertained. It is not shown that the trustees of the high school have chosen another location for the institution than the one named in the proposition submitted to the people, or that they will not accept the appropriation and devote it to the uses indicated by the vote. We conclude that the objection under consideration is without force.

III. The next matter urged against the validity of the proceedings is the union of two objects, and two separate appropriations for distinct objects, in one proposition, so that the elector could not vote for one and against the other. We think this presents a fatal objection to the legality of the proceedings.

4. ELECTION: proposition for outlay of money.

The question to be submitted to the voters was not simply whether it was their will to appropriate the fund; but there must be an *object* for the appropriation in order to constitute the proposition to be voted upon. The object is of the essence of the proposition. This cannot be denied. The appropriation for a given object is the proposition submitted. If there be two objects and a specified amount of funds to be devoted to each, it is very plain that there are two propositions submitted at the same election. If they are submitted together, it is very clear that the voter cannot vote for one and against the other. He must vote against both, whereby he may defeat one, the success of which he desires, or he must vote for both, whereby he may cause the success of one which he desires to be defeated. If he fails to vote he may thus aid in causing the defeat of his favorite measure, and the adoption of the one he opposes. He has thus no liberty of choice. The plan of submitting the questions, for there are two, resembles more the common device of an auctioneer in disposing of worthless goods, whereby a good article is mingled with them and made to draw bids, or the cunning tricks of gamesters to induce wagers of the unwary, rather than the open, direct and fair manner that always should prevail in elections by the people. The very letter as well as the spirit of our election laws con-

demns this plan. It has never been heard of that electors were, by any plan, denied the right of choosing one, and rejecting another candidate for office, to be voted for at the same election.

This very point, the necessity of submitting to the electors distinct propositions for the outlay of money, so that they may exercise the liberty of choice in voting for one and against another, was presented in *McMillan v. Boyles et al.*, 3 Iowa, 311, and decided in accord with the views we have just expressed. That case and this are not different as to the controlling facts in each. In that case several propositions were submitted to the voters of a county at the same election, each for subscribing to the stock of a railroad company, other than those separately named in the other propositions, and the payment of the stock by bonds issued by the county. There were thus three separate and distinct propositions. But it was a condition of the submission that no subscription should be made to either railroad unless there should be a majority of votes for each proposition. The result was that a vote against one was really counted as a vote against all. The voter could not exercise freedom of choice in voting for one and against another. The proceedings and the adoption of all the propositions in this manner were held invalid. We are able to make no distinction in the controlling fact of that case and of this. It is in both the same, namely: the voter is deprived of the liberty of voting against one proposition without giving a negative ballot to all. Indeed, the case before us is, if possible, more objectionable in its facts than *McMillan v. Boyles et al.* In that case the elector could vote upon the separate propositions; in this he could not.

The decision in the case just cited is supported by the most satisfactory reasons, presented in a clearly expressed opinion. It is not proper to repeat the argument of the learned Justice announcing the decision of the court. It is sufficient to say that we adhere to the conclusion reached therein.

The learned and ingenious counsel for defendants points

out, perhaps successfully, that a part of the *argument* found in the opinion in *McMillan v. Boyles,* is not applicable to this case. This may be admitted, for our present purpose, without inquiry into the correctness of the positions. But it is quite clear that the argument taken in hand by counsel was not wholly relied upon by the court. Indeed, it is used in the opinion, as it is there stated, simply to *strengthen* the views advanced therein. We would not feel our confidence in the conclusions we adopt at all shaken were we fully to admit the positions of counsel in reference to that argument. Indeed, we may say that we are prepared to rest our conclusions upon the reasons we have announced, together with those found in *McMillan v. Boyles* which counsel has not assailed.

It is our conclusion that, for the defects above pointed out, the proceedings against which plaintiffs seek relief are invalid. The relief, therefore, should have been granted.

REVERSED.