## RAE *v.* GRAND TRUNK RY. Co.

*(Circuit Court, E. D. Michigan.* November, 1882.)

1. JURISDICTION—WANT OF—DISMISSAL ON MOTION OF COURT.

    It is no longer necessary to take advantage of the want of the requisite citizenship by plea in abatement. If this or any other defect of jurisdiction appears upon the trial, it is the duty of the court upon its own motion to stop the proceedings and dismiss the suit.

2. SAME—AMENDMENTS NOT ALLOWABLE.

    An amendment to the declaration, designed to raise a question "under the constitution and laws of the United States," and thereby to create a case cognizable by the circuit court, irrespective of the citizenship of the parties, will not be permitted unless it appears that it will be likely to avail the plaintiff.

3. RAILROADS—STATUTE REGULATIONS—CONSTITUTIONALITY.

    A state statute requiring railroads to draw the cars of other corporations as well as their own, at reasonable times and for a reasonable compensation, to be agreed upon by the parties or fixed by the railroad commissioner, does not conflict with the constitutional provision that congress shall have power to regulate commerce between the states.

On Motion to Dismiss.

This was an action by a car-coupler in the employ of defendant to recover for personal injuries sustained by him in coupling two freight cars at the Grand Trunk Junction in this city; one of which cars belonged to the defendant, and the other to some other road, being what is termed a "foreign car." This foreign car differed in construction from those used by the defendant, in having what is known as a "platform dead-wood," and, it was claimed, was not only much more dangerous in its original construction, but was out of repair, and that defendant's inspectors were guilty of negligence in permitting it to pass over the road. The declaration described the plaintiff as a resident and citizen of the eastern district of Michigan, and the defendant as an alien. Upon the trial, however, it appeared that the plain-

tiff himself was also an alien, and the defendant immediately moved that the action be dismissed for want of jurisdiction.

*D. E. Prescott* and *John D. Conely*, for plaintiff.

*H. H. Swan* and *Henry Russell*, for defendant.

BROWN, D. J.   That this court has no jurisdiction of controversies between aliens, either under the judiciary act of 1789 or the act of 1875, is admitted.   Prior to the act of 1875, however, advantage could be taken of the want of requisite citizenship only by plea in abatement; if the defendant pleaded to the merits, the jurisdiction was admitted.   *Smith* v. *Kernochan*, 7 How. 198; *Sheppard* v. *Graves*, 14 How. 505; *De Sobry* v. *Nicholson*, 3 Wall. 420.   While the jurisdiction of the circuit courts is considerably enlarged by the first section of the act of 1875, and apparently extended to the utmost constitutional limit, section 5 vests these courts with a summary power to stop proceedings and dismiss a suit, whenever it shall appear that it does not really and substantially involve a dispute or controversy properly within its jurisdiction, or that the parties to such suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable by such court.   · The salutary nature of this provision is not open to question. It is notorious that claims have been enlarged or collusively assigned to non-resident plaintiffs, and fictitious domiciles established, for the express purpose of clothing the circuit court with jurisdiction of cases which had no proper place upon its dockets.   Frequently this fraud upon the court passed undiscovered until the trial had been begun, and it was too late to take advantage of it.   This section was admirably designed to strike at the root of these covert attempts to confer jurisdiction.   While it has been the practice in this district, even since the act of 1875, to plead the want of proper citizenship in abatement, it is clear, from the opinion of the supreme court in *Williams* v. *Nottawa*, 104 U. S. 209, that this is no longer necessary, and that it is the duty of the court, of its own motion, to dismiss the suit the moment the want of jurisdiction is made evident.   Thus, if it should appear that the plaintiff and defendant were both aliens, or citizens of the same state, or that the plaintiff, at the time suit was commenced, must have known that the amount of his recovery would be less than $500, I apprehend it is the duty of the court to dismiss; although if he had sued in good faith to recover more than $500, the fact that the verdict for a less sum was obtained would not deprive the court of jurisdiction, and would only affect his right to costs.

As it is not disputed in this case that both parties are aliens, the suit must be dismissed.

(Plaintiff thereupon moved for leave to amend his declaration by averring in substance that the defective car belonged to a foreign corporation; that such car was loaded outside of the state, and was in the course of transmission through the state to its place of destination. He further averred that there was a state statute in force at the time of the accident which provided that every corporation owning a road in use was at reasonable times, and for a reasonable compensation, to be fixed by the parties or the railroad commissioner, compelled to draw the merchandise and cars of another corporation; that since the passing of such statute two decisions have been rendered by the supreme court of the state which held that by reason of said statute the duty of the company in the reception of such car was only to furnish competent inspectors. He further averred that said statute, as construed by said supreme court, is in conflict with the provision of the constitution of the United States that congress shall have power to regulate commerce with foreign nations and among the several states.)

The object of this amendment is evidently an endeavor to raise a question under the constitution and laws of the United States, and thus create a case cognizable by this court under the first section of the act of 1875. It seems to me there can be no question that it was the intention of congress in enacting this section to permit the plaintiff to resort to the federal courts in every case involving over $500 in amount, and arising under the constitution or laws of the United States, notwithstanding the defendant may be a citizen of the same state, and thereby to obviate the necessity which had previously existed of suing in the state court, and finally raising the federal question upon writ of error from the supreme court of the United States to the supreme court of the state. *Sawyer* v. *Concordia*, 12 FED. REP. 754.

Whether, if this amendment had been originally incorporated into the declaration, it would have raised the federal question, it is unnecessary to decide, for I am clearly of the opinion that where the discretion of the court is invoked to permit such an amendment, we are at liberty to examine and to determine the point whether it will be likely to avail the plaintiff. The proposed amendment contains in substance an averment that the supreme court of this state has construed a state statute, requiring railroad corporations of this state to draw cars of other corporations, as relieving such roads from

any further obligation with respect to the running condition of such cars, than to provide competent inspectors to see that they are in order, and that such statute, as so construed, is in conflict with the constitutional provision that congress shall have the power to regulate commerce with foreign nations and among the several states. But clearly these rulings of the supreme court are not constructions of the statute, and hence are not binding upon this court. They are mere definitions of the duties of a railroad corporation receiving cars which they are compelled to transport under the statute. This is a ruling upon a general question of law, and not obligatory upon this court. To construe a statute or other writing is to determine the meaning of the words used. It is obvious that the supreme court was not called upon to do this in the cases referred to.

And, again, it is equally clear that the statute in question does not conflict with the constitutional provision, since nothing is better settled than that the state legislatures may lawfully regulate commerce passing through their territory, when such regulations do not conflict with any congressional enactment. Thus, in the *Railroad Co.* v. *Fuller*, 17 Wall. 560, it was held that a state statute requiring railroads to fix their rates for transportation of passengers and freight, and to cause a printed copy of such rates to be posted up at all their stations along the line, was a mere police regulation, and did not conflict with an act of congress authorizing railroads to receive compensation for the transportation of passengers and merchandise over their lines. It was stated by Mr. Justice SWAYNE to be such an act as forms "a portion of the immense mass of legislation which embraces everything within the territory of a state not surrendered to the general government, all which can be most advantageously exercised by the states themselves." See, also, *C., B. & Q. R. Co.* v. *Iowa*, 94 U. S. 155; *Munn* v. *Illinois*, 94 U. S. 113; *Sherlock* v. *Alling*, 93 U. S. 99–104.

In all such cases respecting commerce between different states the state legislatures may act, and their statutes are valid so long as congress does not see fit to legislate upon the subject, and supersede the statutes of the state by enactments of its own.

The motion for leave to amend must be denied, and the case dismissed, with costs.