GEORGE H. MITCHELL et al., Appellees, v. CHARLES CITY
WESTERN RAILWAY et al., Appellants.

**TAXATION:**   Statutes—Tax Aid to Railways—Strict Construction.
1   A statute authorizing the voting and levy of a tax in aid of the
construction of an electric railroad is in derogation of the common
law and is to be most strongly construed against the railway
company.

**TAXATION:**   Railroad Aid Tax—Formation of District—Delegation
2   of Power.   The legislature may delegate to other bodies or per-
sons the power to fix the limits of the taxing district wherein it
is proposed to vote a tax in aid of a railroad.   In the absence of
fraud or gross abuse of discretion such district will not be dis-
turbed by the courts.

PRINCIPLE APPLIED:   Chap. 169, Acts 35 G. A. (Secs. 2091-b
to 2091-f, Sup. Code, 1913), provides for voting tax aid in favor
of electric railways.   An election is secured by the filing of a
petition before the board of supervisors, signed by a majority
of the resident freehold taxpayers of "any definitely described
district or territory contiguous to and within five miles of the
proposed railroad."   The district in question as described in the
petition was not co-extensive with the five-mile limit, but ran in
an irregular line on each side of the proposed line of railway in
such a way as not to divide sections.   A portion of land adjacent
to the line, at one end of the road, was omitted from the district.
The board, in effect, approved this petition.   Fraud was not
charged but it was objected (a) that the district was arbitrarily
formed, (b) did not include all the land benefited, and (c) that
benefits were not graded.   Objections overruled.

**TAXATION:**   Tax Aid to Railway—Constitutionality.   The statute
3   (Secs. 2091-b to 2091-f, Sup. Code, 1913) authorizing the voting
of a tax in aid of electric railways is constitutional.

**TAXATION:**   Tax Aid to Railways—Graduating Tax—Power of Leg-
4   islature.   The legislature may constitutionally authorize the levy
of a tax in aid of a railway without requiring all the lands bene-
fited to be included in the taxing district and without grading
such tax according to benefits.

**TAXATION:** Tax Aid to Railways—Statutory Requirements Exclusive. The statutory requirements as to what shall be done in order to legally vote a tax under Sec. 2091-b, Sup. Code, 1913, in aid of a railway are exclusive of all other requirements.

**ELECTIONS:** Special Propositions—Submission of—Form of Ballot —Duality—Taxation. Two distinct "objects" must not be so intermingled in a proposition submitted at an election that the voter is unable to freely express his choice on one without reference to the other. The proposition must be confined to one general related scheme. But the "object" is of the essence of the proposition. There is no duality unless the proposition involves purposes which cannot naturally and reasonably be said to be a part of one general plan or scheme.

PRINCIPLE APPLIED: Proceeding to vote a tax under Ch. 169, Acts 35 G. A. (Secs. 2091-b to 2091-f, Sup. Code, 1913). The petition for the election, the notices of election and the form of the ballots embraced the proposal to vote the tax (a) in aid of the *electrification* of a line of steam railway already owned and operated by the company from Marble Rock in Floyd county to Charles City in the same county, a distance of thirteen miles, and (b) in aid of the *construction* by the same company of an electric railway from the point where the old steam railway ended in Charles City to a point some ten miles northeasterly in said county. The manifest purpose was that the entire line of 23 miles should constitute an electrical line. *Held,* the proposition (a) "to electrify" the old steam line and (b) "to construct" the electrical extension constituted only one general related scheme and was, therefore, not subject to the vice of duality.

**WORDS AND PHRASES:** Conjunctive and Disjunctive Terms. "Or" may be read "and" if the context justifies such interpretation.

PRINCIPLE APPLIED: Sec. 2091-b, Sup. Code, 1913, provides in substance that taxes may be levied "to aid in the construction of a projected electric railroad *or* in the electrification of a steam railroad." *Held,* "or" might be read as "and."

*Appeal from Floyd District Court.*—HON. M. F. EDWARDS, Judge.

TUESDAY, SEPTEMBER 29, 1914.

REHEARING DENIED TUESDAY, FEBRUARY 23. 1915.

Suit in equity to enjoin the levy and collection of a tax voted in aid of the electrification and construction of an interurban or trolley line of railway, from Marble Rock into and through Charles City, and on in a northeasterly direction some nine or ten miles to the county line. The trial court granted the prayer of the petition, and defendants appeal.— *Reversed.*

*Edwards, Longley & Ransier, John P. Gregg* and *C. S. Moore,* for appellants.

*Senneff, Bliss & Witwer, Dunn & Bryant, W. H. Salisbury* and *H. J. Fitzgerald,* for appellees.

DEEMER, J.—Prior to the happening of the matters complained of, the Charles City Western Railway owned and operated a steam railway from Marble Rock to Charles City, a distance of approximately 13 miles, and in the fall of the year 1913, it concluded to electrify this line, and to extend its road northeasterly from Charles City some nine or ten miles to the county line. Desirous of obtaining aid by taxation for the making of these improvements, it secured and presented a petition to the board of supervisors, to submit the matter to a vote of the residents of a district created by the petitioners. Finding the petition sufficient in form and substance, the board of supervisors called an election by the residents and prepared a ballot for the election formulated from the petition, and at the election called for the purpose the proposition was declared carried, and the board was about to certify the tax when plaintiffs, who are resident landowners and taxpayers within the district, commenced this action to enjoin the levy and collection of the tax.

The propositions relied upon to defeat the tax are something like sixteen in number; but they revolve around a few central propositions which may be stated as follows:

(a) The petition for the tax and the proposition stated in the ballots was not a single one, but dual in character, and

so worded that an elector would have to vote for or against both, although he might have desired to vote affirmatively on one and negatively on the other.

(b) The propositions themselves were uncertain and insufficient in that they did not state the amount of money required for electrifying the old road and for the construction of the new line.

(c) The propositions were inadequate and insufficient in that they did not state what part of the new line should be constructed and what part of the old electrified before the tax was collected.

(d) The legislature had no power to authorize the establishment of taxing districts for voting aid to steam or interurban railways.

(e) The property in the proposed district was not classified according to benefits, and the tax was not uniform or according to benefits received.

(f) Not all the property benefited was included within the district.

(g) The provisions of 35 G. A., Ch. 169, if construed as contended for by appellants, are unconstitutional and void.

Appellees' first contention in support of the decree of the trial court is that, as the statutes under which the proceedings were instituted are in derogation of the common law, and impose a tax upon property owners, or some of them, without their consent, they are to be construed most strongly against the railway company. This contention is sound, of course, and the rule will not be lost sight of during the course of this opinion.

1. TAXATION: statutes: tax aid to railways: strict construction.

As the statute under which the defendant proceeded is new, and has never received a construction by this court, we quote therefrom as follows:

"Sec. 1. Taxes not exceeding five per. cent on the assessed value of the real property of any district or territory contigu-

ous to any projected trolley or electric railroad, or to any steam railroad which it is proposed to electrify, may be levied to aid in the construction of such projected trolley or electric railroad, or in the electrification of such steam railroad, within the state, as hereinafter provided.

"Sec. 2. When it is proposed to construct any trolley or electric railroad, or to electrify any steam railroad, and a petition definitely describing any district or territory contiguous to and within five miles of the line of such railroad or proposed railroad, signed by a majority of the resident freehold taxpayers, of such district or territory, asking that the question of aiding in the construction or electrification of such railroad or proposed railroad within such district or territory, be submitted to the voters thereof, is presented to the board of supervisors of the county in which such district or territory is situated, it shall be the duty of such board of supervisors immediately to give notice of a special election by publication in some newspaper published in such district or territory, if any there be, and if not, then in some newspaper published in the county, and also by posting copies of said notices in five public places in such district or territory at least ten days before such election, which shall state the time and place of holding the same, the name of the company and the line of the road proposed to be added, the rate per cent of the tax to be levied; whether one-half thereof shall be collected the first year and one-half the following year, or whether the whole is to be collected in one year, the amount of work required to be done, and when and where the same shall be done, to what point said railroad shall be fully completed, and any other conditions which shall be performed before such tax or any part thereof shall become due, and in no case shall such tax become due until such railroad is fully completed according to the conditions of said notice. The board of supervisors shall cause to be prepared the form of the proposition to be submitted, and the proposition shall be printed and placed upon the ballots, and the board of supervisors

shall appoint the judges and clerks of election, and the election shall be conducted in the same manner as provided with respect to like or similar propositions in the chapter on elections, and the judges of election shall canvass the vote and make return to the county auditor, and if a majority of the votes polled be for the adoption of the proposition, then the county auditor shall forthwith certify to the result thereof, rate per cent of the tax voted, the year or years during which the same is to be collected, the name of the company to which voted, and the time, terms and conditions upon which the same when collected is to be paid under the conditions and stipulations in said notice, together with an exact copy of the notice under which the election was held, which the county auditor shall at once cause to be recorded in the office of the recorder of deeds. The expense thereof and of publishing the notice and all the expenses of the election shall be paid by the railway company to which it is proposed to vote the tax. When such certificate has been made and recorded the board of supervisors of the county shall at the time of levying the ordinary tax next following, levy such taxes as are voted under the provisions hereof as shown by said certificate, and cause the same to be placed on the tax lists of the proper township, town or city, indicating in their order thereupon when and in what proportion the same are to be collected, and upon what conditions the same are to be paid to the railway company, a certified copy of which shall accompany the tax list. The taxes shall be collected at the time or times specified in the order and in the same manner and subject to the same laws after they are collectible as other taxes, or as may be stated in the petition and notice for the election, except as otherwise provided; provided however, that such tax shall only be levied upon the real property within such district or territory. The stipulations and conditions in the notice prescribed in this section must conform to those set forth in the petition asking for the election, and the aggregate amount of taxes

voted in any such district or territory shall not exceed five per cent of the assessed value of the real property therein.

"Sec. 3. The provisions of Secs. 2087, 2090 and 2091 of the supplement to the code, 1907, are hereby made applicable to all taxes levied under the provisions of this act."

The petition presented to the board was in substance as follows:

"To the Board of Supervisors of the County of Floyd, State of Iowa: The undersigned petitioners representing a majority of the resident freehold taxpayers of that certain District lying wholly within Floyd County, Iowa, and hereinafter definitely described, do hereby respectfully petition your Honorable Body that you cause to be submitted to the voters of said District the question of voting a tax of five per centum on the assessed value of all the real property within said District for the purpose of aiding in the electrifying by the Charles City Western Railway Company of that portion of its present line of railroad extending from the west line of Section 2, Township 94, Range 17, West of the 5th P. M. a point near Marble Rock, in said County, northeasterly to and within the City of Charles City, in said county, and the construction by said Charles City Western Railway Company of a trolley or electric railroad from its present terminus in said City of Charles City, northeasterly to a connection with the Chicago Great Western Railway, all as provided by Chapter 169, of the laws of the 35th General Assembly of Iowa, entitled, 'An Act to enable benefited property to aid in the construction of trolley or electric railroads or the electrification of steam railroads, being additional to Chapter 5 of Title 10 of the Code as amended.'

"It is provided that the aid to be voted for is on the express condition that no part of said money shall be drawn from the treasury by said Charles City Western Railway Company until said described portion of its present steam line of railroad is fully electrified, and said proposed trolley

or electric railroad fully completed northeasterly from Charles City to a point near the center of the north line of Section 32, Township 96, Range 15, West of the 5th P. M., in said county, when one-half of the said tax shall be paid to said Company as soon as same may be legally collected, and the last half of said tax shall become due and payable when said trolley or electric railroad shall be fully completed northerly and northeasterly from said north line of Section 32 via Niles to and across the Little Cedar River to a point near the northeast corner of Section 10, Township 96, Range. 15, West of the 5th P. M., in said County, and within the District hereinafter described, and on the further express condition that the first part of said work, required to be done, shall be completed by the first day of July, 1915, and said last part of said work, required to be done, shall be fully completed by November 1st, 1915.

"The district above referred to and within which you are requested to submit to the voters thereof the question hereinbefore mentioned shall be that District definitely described as: (here follows the description of the lands). All of which District lies wholly within Floyd County, Iowa, and contiguous to and within five miles of the line of railroad or proposed railroad which it is hereby proposed to aid."

The board made an order granting the petition and ordering an election, and also gave notice of an election which included a copy of the petition in *haec verba*. At the election the following form of ballot was prepared by the board and used by the electors:

OFFICIAL TAX PROPOSITION BALLOT.

Special Election, January 3, 1914.

NOTICE TO VOTERS. For an affirmative vote upon any question submitted upon this ballot, mark a cross (X) mark in the square after the word "YES."

For a negative vote make a similar mark in the square following the word "NO."

SHALL THE FOLLOWING PROPOSITION BE
ADOPTED?

Shall a tax of five per cent (5 per cent) on the assessed value of the real property of that certain district definitely described in the petition referred to and set out in the notice of this special election, be levied to aid in the construction of the projected trolley or electric railroad projected by the Charles City Western Railway Company, a corporation organized under the laws of the State of Iowa, and to aid in the electrification of the portion of the line of steam railroad of said Charles City Western Railway Company, situated in said district, being the same projected trolley or electric railroad and the same portion of the line of steam railroad of said Railway Company referred to and specified in said notice of election, said tax to be collected at the time or times therein specified, and to become due and payable to said Railway Company at the time or times and upon the conditions as specified in said notice.

| YES |
| --- |
| NO |

An election was held; thereat 1,233 votes were cast in favor of the proposition, and 877 against, a majority of 356 being in favor of the tax.

The district as formulated by the petitions and as approved by the board is shown by the attached plat. This plat also shows the old line of road and the part to be newly constructed. It also shows the five-mile limit.

It will be observed that the district lines do not correspond with the five-mile limit, and that some of the land adjacent to the old line of road is not included within the district. There is no charge of fraud in the petition, but it is asserted that the district was arbitrarily formed, that it does not include all the land benefited, and that there is no gradation of benefits.

The only testimony regarding the reason for shaping the district so as to exclude Marble Rock and some immediate territory, was as follows:

"We had a good reason why we did not want to take in the town of Marble Rock; it was not because we thought, if we did, that it would not carry, that was not the reason. . . . The reason for stopping the taxing district two miles this side of Marble Rock was that the people of Marble Rock were interested in having the road extended further Southwest, which had been discussed considerable, and for the reason that with such an extension a new taxing district would be laid out including Marble Rock and the vote for the Southwest. And, therefore, this taxing district was stopped two miles from Marble Rock with the understanding that when it came to the extension of the road to the Southwest, this would be a new taxing district, in which they would be included. We did not want to include them in both, and as I understand, we could not if we did want to, within ten years."

It will be observed that the legislature did not definitely fix the district to be affected by the tax, and this of necessity was left either to the petitioners or to the board of supervisors, or to the petitioners with the consent and approval of the board; the only limitation being that the property shall be contiguous to and within five miles of the line of road or proposed road.

**2. TAXATION: railroad aid tax: formation of district: delegation of power.**

The tax is in aid of a public improvement,—a railway or interurban railway being treated as a highway, specially benefiting those within the sphere of its usefulness,—and all such property within the proposed district is regarded as specially benefited and, under certain conditions, liable to the tax. It is perfectly legitimate for the legislature to fix taxing districts or to delegate this power to other bodies or persons, and in the absence of fraud or gross abuse of discretion, such

districts will not be disturbed by the courts. There is no claim of fraud here, and nothing but the bare fact that some property supposed to be benefited and other property not benefited at all or differently benefited from other lands is included, is relied upon to defeat the tax. Many reasons might be suggested for not including all within the five-mile limit. As the road runs obliquely through the county, it is manifest that an absolute five-mile limit would be wholly impracticable, for it would divide up much of the land into small, irregular tracts, and impose great burdens in the levy and collection of the tax.

Moreover, as the tax is a flat one, not graduated according to benefits, it is difficult to see how plaintiffs were prejudiced by the fact that not all within the five-mile limit was included. The explanation given for not including some of the property near Marble Rock is not contradicted, and if it were, but one other possible motive can be suggested, and that is that as the owners of the omitted lands near Marble Rock had adequate facilities they would vote against the proposed tax and might thus kill the whole project. This suggestion is two-edged. If they were in fact not benefited and so would be led to vote against the entire proposition, then they should not, on appellees' theory, have been included for the reason that they received no benefit from the project. Furthermore, it is difficult to see how the plaintiffs were prejudiced by the non-inclusion unless on the theory that the votes of the owners of these lands would have been against the tax proposition and if included they would have converted a majority into a minority.

**3. Taxation: tax aid to railway: constitutionality.** There is nothing in appellees' claim that the law is unconstitutional. It is uniform in its operation, and the tax need not be a graduated one. *C. B. & Q. R. R. v. Iowa,* 94 U. S. 155; *Stewart v. Board,* 30 Iowa 9.

The presumption is that the district was properly formed, and as a rule the action of a body properly authorized to create an assessment district is conclusive in the absence of

a showing of fraud or mistake. *Powers v. City of Grand Rapids,* 57 N. W. (Mich.) 250; *Sanitary Dist. of Chicago v. Joliet,* 59 N. E. 566.

The law is not unconstitutional and no good reason is shown why the tax should be disturbed because of the nature of the district created by the petition and approved by the board of supervisors. The law does not re-

4. TAXATION : tax aid to rail-ways : gradu-ating tax : power of legis-lature.

quire a graduated tax, and the legislature may establish the outside limits of such a proposed taxing district. If appellees' contentions were sound, many works of public improvement would be stopped, and much confusion would be introduced into what has heretofore been regarded as settled law.

The tax is not for the cost of the improvement, but in aid of the establishment of a highway, and the entire burden is not thrown upon those specially benefited. Within the five-mile limit all the lands may be taxed at a flat rate, and this, as it seems to us, is within the power of the legislature.

5. TAXATION : tax aid to rail-ways : statu-tory require-ments ex-clusive.

II. It is argued that the entire proceedings are invalid because nowhere is it stated, in any of the petitions, notices or proceedings, what the cost of electrification would be, and what the cost of construction and electrification of the new piece of road.

Suffice it to say that the law does not require a statement as to the cost of the whole or any part of the improvement. There is no necessity for such a statement, and as none is required by law, courts are not justified in requiring it.

III. The only debatable proposition in the case relates to the sufficiency of the proposition submitted to the electors, and to the form of the ballot for their use. It is strenuously and earnestly contended that the petition for

6. ELECTIONS : special propo-sitions : sub-mission of : form of bal-lot : duality : taxation.

the tax, the notice to the electors and the ballot used at the election, contain dual propositions, and that it was impossible for the electors to vote for one and against the other, or to in any manner express themselves save for or against

both propositions, to wit, the electrification of the old steam line from Marble Rock to Charles City, and the construction of a new line from Charles City in a northeasterly direction some nine or ten miles, and that the resul+ was not and could not be a fair expression from the people concerned. On the other hand it is asserted with quite as much confidence that there was but one object to be attained in the proposition submitted, and that was the construction, equipment and operation of but a single line of electric railway, from Marble Rock through Charles City, northeasterly to the county line, some nine or ten miles, to be owned, operated and maintained by one company without break, and probably extended in both directions if circumstances warranted.

It is admitted, of course, that the old steam railway was to be used as a part of the line, and was to be converted into a part of the electric line, but it is contended that this did not make the proposition a double one for the reason that but a single object was contemplated. But for these contentions on behalf of the respective parties, the case doubtless would not be before us and the question is not easy of solution. Authorities apparently supporting either proposition are cited; and some reliance is placed on the terms of the statute which says that the tax may be voted for the construction of a trolley or electric railroad *or* to elec-

7. WORDS AND PHRASES : conjunctive and disjunctive terms.

trify a steam railway. Great reliance is placed upon the disjunctive *or*. But to our minds this is not controlling. Of course, either may be submitted, but it does not follow from the language of the statute that both may not be submitted where it is proposed to electrify part of a steam road already constructed and to construct another piece of electric railway to be operated as a part of one system and in conjunction with it.

The use of a disjunctive word in a statute does not imply that the conjunctive was not intended. *Barker v. Esty*, 19 Vt. 131; *Winterfield v. Stauss*, 24 Wis. 394; *Sparrow v. College*, 77 N. C. 35; *Rigoney v. Neiman*, 73 Smith (Pa.) 330.

This is the rule even in criminal cases: *State v. Smith*, 46 Iowa 670; *State. v. Brandt*, 41 Iowa 593; *State v. Meyers*, 10 Iowa 448.  So that the use of the word "or" is not in itself determinative of the proposition here involved.

Of course if the roads were separate and independent propositions, and it was not intended to make a single electric line, appellees' contention would be sound.  But according to the weight of authority and sound reason, if but a single road, electric or trolley line is contemplated, the fact that it involved the conversion of an old steam road by electrification into a part of the system does not make the proposition dual in character.  If, for any reason, parties within the district served by the old line did not care to have it become a part of a system of electric road extending some nine or ten miles beyond the terminus of the old line, or did not wish to have it *electrified* at all, it was within their power to so express themselves by voting against the entire proposition; and in the same manner those living in proximity to the line to be newly constructed could indicate their choice.  Unless the proposition involves incongruous purposes which cannot naturally and reasonably be said to be a part of one general plan or scheme, there cannot be said to be such a blending of the two as that they must be submitted separately.  *Coleman v. Eutaw*, 157 Ala. 327, 47 So. 703; *Kemp v. Hazelhurst*, 31 So. (Miss.) 908 *Cary v. Blodgett*, 102 Pac. (Cal.) 668; *Seymour v. Tacoma*, 32 Pac. (Wash.) 1077; *Oakland v. Thompson*, 91 Pac. (Cal.) 387; *Lain v. Omaha*, 107 N. W. (Neb.) 983; *L. & N. Ry. v. County*, 62 Am. Dec. (Tenn.) 424.

These cases hold, in effect, that although there may be two parts of a proposition, if such parts make one connected whole, the scheme is not a dual one.  For example, in one of the cases, a proposition to build a fire engine house in one part of a city, and another in a different part upon a lot to be purchased for that purpose, was held not dual in character.  *Lain v. Omaha, supra*.  Again, a proposition to construct two wagon roads was held single in character.  *People v. Counts*,

26 Pac. (Cal.) 612. And a proposition to purchase or erect waterworks has been held not dual in character. *Nash v. Council Bluffs,* 174 Fed. 182; *Ryan v. Tuscaloosa,* 46 So. (Ala.) 638; *State v. Allen,* 77 S. W. 868. Although the contrary has also.been held. A proposition to build a court-house and jail, if to be all in one building, has generally been held to be a single one. *Hughes v. Horsky,* 122 N. W. (N. D.) 799; *Potter v. Lainhart,* 33 So. (Fla.) 251; *Louisville v. Park Com.,* 65 S. W. (Ky.) 860. And one court has held that if separate buildings be proposed upon different lots, the proposition is dual in character. *Stern v. Fargo,* 122 N. W. (N. D.) 403. Another court has held that a proposition to acquire several distinct and separate tracts of land for park purposes is but a single scheme. *Oakland v. Thompson, supra.* But see *Gray v. Mount,* 45 Iowa 591.

Of course, there must be one general related scheme— one general improvement—else it will be dual in character. But if there be but one object in view, the fact that it involves reconstruction as well as construction does not make the proposition dual. *Coleman v. Eutaw, supra; State ex rel. Chillicothe v. Wilder,* 98 S. W. 465; *L. & N. Ry. v. County,* 1 Sneed (Tenn.) 637; *Lynch v. R. R.,* 15 N. W. (Wis.) 743; *U. P. R. R. v. County,* 3 Dillon 359; *State v. Allen, supra.*

We copy the following from our own cases as illustrative of the doctrine here announced.

In *Rock v. Rinehart,* 88 Iowa 37, the proposition was:

"Shall the board of supervisors . . . contract for the erection of a courthouse . . . at a cost not to exceed the sum of fifty thousand dollars, from the proceeds arising from the sale of the lands belonging to said county, lying in the counties of Ida and Cherokee.

"The appellants contend that two separate and distinct propositions are contained in this ballot, so joined that a vote for one necessarily resulted in a vote for the other, namely: 'Shall the board of supervisors of Iowa County be authorized

to order and contract for the erection of a courthouse at
Marengo, the county seat of said county, at a cost of not to
exceed the sum of fifty thousand dollars?' 'Shall the swamp
land fund belonging to Iowa county be devoted wholly to the
construction of a courthouse at Marengo, in Iowa County?'
Elections like this are governed by the same rules that apply
to the election of officers. In canvassing the vote the inten-
tion of the voters must be ascertained from their ballots. The
language of the ballot is to be construed in the light of facts
connected with the election. *Hawes v. Miller,* 56 Iowa 395,
396. The appellants cite and rely upon *McMillan v. Lee Co.,*
3 Iowa 311, and *Gray v. Mount,* 45 Iowa 591. In the case of
*McMillan v. Lee Co.,* the proposition submitted to be voted
on at the same time was whether or not the county would
subscribe to the capital stock of three different railroad com-
panies, one hundred fifty thousand dollars in each, with a
provision as follows: 'That the said subscription shall not
be made to either of said companies unless the vote shall be
carried in favor of each and all of them.' While it is inti-
mated that the three propositions might have been submitted
at the same time in such a manner as to be voted upon sepa-
rately, it is held that under the clause last quoted no single
question was submitted, but the fate of each proposition was
made to depend upon the result of all three. Thus combined,
the voter who favored one or two of the propositions, and
opposed the others, could not vote his sentiments. He must
vote for or against all. The vice in such a submission is that
by thus joining different propositions a popular and desirable
proposition may be made to carry one that is not desired; or
an undesirable measure to defeat one that is desirable. In
*Gray v. Mount* the proposition submitted was: 'Shall the
swamp-land of Guthrie County, Iowa, be devoted by the board
of supervisors of said county to the erection of a courthouse
at Guthrie Center, in said county, and a county high school
in the town of Panora, in said county, in the proportion of
two-thirds thereof to the erection of said courthouse and one-

third to the erection of said county high school building?'
In passing upon the legality of this proposition this court
held that the object is of the essence of the proposition; that
the appropriation for a given object is the proposition sub-
mitted; that, if there are two objects, there are two proposi-
tions, and if submitted together, the voter cannot vote for
one, and against the other. *Supervisors, etc. v. Mississippi &
W. Ry. Co.,* 21 Ill. 338, 373, and other Illinois cases following
it, are also cited by appellants. In those cases, as in *McMillan
v. Lee Co.,* the proposition was in aid of more than one rail-
road company, and was held bad under their statute. *Lewis
v. Commissioners,* 12 Kan. 186, 213, cited, holds that the com-
missioners could not, by construction, enlarge the authority
given by a vote upon a single proposition so as to include
another. A careful reading of the ballot under consideration,
in the light of facts connected with the election, shows marked
distinctions between this and the cases cited. There is but
one object—the erection of a courthouse—while in those cases
there were two or more. Following *Gray v. Mount, supra,*
we must say that, there being but one object, there was but one
proposition.''

In *Brooks v. The Town of Brooklyn,* 146 Iowa 136, the
ballot was:

''Shall the following public measure be adopted, to wit:

''Shall the contracts approved by the town council in
relation to the erection of a town hall be adopted, as follows:
(Here are set out the contracts).

''The case presents two questions: The first being the
sufficiency of the ballot; and the second, the nature of the
building which the town proposed to erect. Two contracts
were presented to the voters for approval; but the elector,
by the form of ballot used, had to vote for or against both
contracts. He could not vote for one and against the other,
save as he by reason of his objection to one should vote against
both. Did this invalidate the election? Because but one

object was sought, viz., the building of a town hall, the question under the rule announced in *Rock v. Rinehart*, 88 Iowa 37, must be answered in the negative. If the voter did not wish to have the town hall erected, he would vote in the negative. If he thought that one of the contracts was bad he would also vote no and as said in *Rock's* case, 'A careful reading of the ballot under consideration, in the light of facts connected with the election, shows marked distinction between this and the cases cited. There is but one object—the erection of a courthouse—while in those cases there were two or more. Following *Gray v. Mount, supra* (45 Iowa 591), we must say that, there being but one object, there was but one proposition.' "

This is the rule we now follow.

IV. It was unnecessary, in this view, to state separately the propositions for electrification and for construction and electrification, as there was but one object—the construction, maintenance and operation of a single line of trolley or electric road, from Marble Rock through Charles City and northeastward nine or ten miles, as already stated. If appellees were correct on their other main proposition they would be correct on this last one; for one depends upon the other. Finding them incorrect on the question of duality, they must be wrong here.

For the reasons stated, the decree must be, and it is— *Reversed*.

All the Justices concur.