## NATIONAL COTTON OIL COMPANY *v.* TEXAS.

ERROR TO THE COURT OF CIVIL APPEALS IN AND FOR THE THIRD
SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 37. Argued November 1, 2, 1904.—Decided February 27, 1905.

The Anti-Trust Acts of Texas of 1889, 1895 and 1899, are all directed to the prohibitions of combinations to restrict trade, to in any way limit competition in the production or sale of articles, or to increase or reduce prices in order to preclude free and unrestricted competition; and, as the legislature of a State may ordain that competition and not combination shall be the law of trade, and may prohibit combinations to control prices, the statutes as they now stand are not in conflict with the Fourteenth Amendment and do not, as against corporations dealing in cotton oil and combining to regulate the price of cotton seed, work a deprivation of property without due process of law, or impair their liberty of contract.

The idea of monopoly is not now confined to a grant of privileges but is understood to include a condition produced by the acts of individuals and the suppression of competition by unification of interest or management or through agreement and concert of action. It is the power to control prices which makes both the inducement to make such combinations and the concern of the law to prohibit them.

The Supreme Court of Texas having construed the act of 1895 as invalid, so far as it was discriminatory by excepting from its operation combinations of agriculturists and organized laborers and fell within the terms of *Conolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, and sustained the act in other respects, and having also held that the act of 1899 although cumulative did not continue the invalid discriminatory provisions of the

act of 1895, this court follows the state court in holding that under the laws of Texas, as they now exist, combinations described in the Anti-Trust Laws are forbidden and penalized whether by agriculturists, organized laborers or others, and there is therefore no discrimination against oil companies, and the latter are not deprived of the equal protection of the laws.

THIS suit was brought under the Anti-Trust Acts of the State of Texas, to forfeit the license of the National Cotton Oil Company to do business in the State of Texas, for violating those acts. The defense is that the acts are repugnant to the Fourteenth Amendment of the Constitution of the United States.

The suit was instituted by the Attorney General of the State and the District Attorney of the Twenty-sixth Judicial District, and the petition alleged the following facts: The National Cotton Oil Company and the Southern Cotton Oil Company are New Jersey corporations, doing and transacting business in the State of Texas by reason of a permit issued to them respectively on the second day of May, 1900, and the third day of June, 1897.

The Taylor Cotton Oil Works is a Texas corporation, doing business in the State under a charter granted August 25, 1898. The said foreign corporations, from the date of their respective permits and the Taylor Cotton Oil Works from the date of its charter have been and are "engaged in the business of the manufacture and sale of cotton seed oil, cotton seed meal and the other by-products of cotton seed; that the business in which each and all of such corporations were engaged necessitated the purchase of cotton seed from which the products which they manufactured and sold were made, and that said cotton seed was an article and commodity of merchandise."

Each of them on or about the first of November, 1901, and on every day prior and subsequent thereto, has been engaged in the business of buying cotton seed in the various counties of the State, and on the first of November, 1901, the National Cotton Oil Company made and entered into a combination with each of the other companies and they with it, and each

of them with various other persons, firms and corporations, whose names are to the defendant in error unknown, and the said corporations "became members of and parties to a pool, trust, agreement, confederation and understanding with each of the other of said corporations, firms and persons, whereby they did each for itself and with each other and all together agree to regulate and fix, and did regulate and fix, the price at which they would buy cotton seed; that they especially regulated and fixed the price of cotton seed throughout the State of Texas at $14.00 per ton, and agreed amongst and with each other that they would not give more than said $14.00 per ton for cotton seed in any of the towns and communities of the State of Texas." Whereby, "and by maintaining the agreement to regulate and fix the price of cotton seed aforesaid, the defendant (the National Cotton Oil Company) was guilty of a violation of the laws of the State of Texas," and in consequence has forfeited its permit to transact business in the State. The cancellation and forfeiture of the permit was prayed, and that the oil company be enjoined from transacting business in the State.

A demurrer was filed to the petition for insufficiency in law to entitle the State to any relief, and alleged against each of the Anti-Trust Acts of the State and the provisions of the Penal Code based thereon, that they violated section 1, Art. XIV, of the Amendments to the Constitution of the United States, in that the act of March 30, 1889, and the code provisions based thereon, deprived the company of the equal protection of the laws, because it was provided by section thirteen of said act and article 988 of the Penal Code that the said statutes "shall not apply to agricultural products or live stock while in the hands of the producer or raiser." And that the act of April 30, 1895, and certain sections of the Revised Statutes of Texas and of the Penal Code were likewise discriminatory because of the same exceptions, and the further exception that said statutes should not be held to "be understood or construed to prevent the organization of laborers for the

purpose of maintaining any standard of wages;" and the act of May 25, 1899, because it was cumulative and a mere supplement to the others, and carried, therefore, the same unconstitutional discriminations.

All of the acts and code provisions are charged with depriving the oil company of its property without due process of law and in violation of the Fourteenth Amendment, in that the penalties are excessive and their provisions so vague and uncertain that the company is denied a resort to the tribunals of the country to defend its rights except on the condition that, if not successful, it shall subject its property to confiscation and forfeit its right to do business in the State.

It is also urged as a ground of demurrer that the act of 1895 violated a provision of the constitution of the State which prohibited a bill to contain more than one subject.

The demurrer was overruled. The company declined to answer further, and judgment was entered forfeiting the license or permit of the company, and enjoining the company from transacting any business in the State "except such business as may be and constitute interstate commerce." The judgment was affirmed by the Court of Civil Appeals. A rehearing was denied and a writ of error from the Supreme Court of the State refused. This writ of error was then granted.

*Mr. William V. Rowe* and *Mr. R. S. Lovett*, with whom *Mr. Ralph Oakley* and *Mr. James A. Baker* were on the brief, for plaintiff in error in this case and in No. 38 argued simultaneously herewith.[1]

The acts of 1889 and 1895 are in contravention of section 1, Article XIV, of the Amendments of the Constitution of the United States, and therefore void, because of the provisions permitting agriculturists, live stock raisers and laborers to form combinations denounced by the acts when formed by others. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540.

By the acts of 1889 and 1895, which were carried into the

---

[1] *Southern Cotton Oil Co.* v. *Texas*, p. 134, *post.*

Revised Statutes and Penal Code, the legislature exempted certain classes from punishment for the same offense charged in this case, and, such discriminating provisions being unrepealed and unaffected by the Anti-Trust Act of 1899, the whole system of statutes is, as a consequence, unconstitutional.

The decisions of the Texas Supreme Court and the legislative enactments show that the legislature intended that the exemption of agriculturists, stock raisers and laborers should remain unimpaired by the Anti-Trust Act of 1897. *Texas v. Laredo Ice Co.,* 96 Texas, 461; *State v. Shippers C. & W. Co.,* 67 S. W. Rep. 1049; *Waters-Pierce Oil Co. v. State,* 19 T. C. A. 1; *Houck v. Anheuser &c.,* 88 Texas, 184.

Taking all the statutes together the act of 1899 is a mere addition to the previous acts and a part of them. The acts being clearly *in pari materia,* they must of course be read together and treated as parts of one system. Potter's Dwarris, 189; *Alexander v. Mayor,* 5 Cranch, 1; *Patterson v. Winn,* 11 Wheat. 380; *Ryan v. Carter,* 93 U. S. 78, 84; *Pearce v. Atwood,* 13 Massachusetts, 324, 344; *Regina v. Tonbridge Overseers,* L. R. 13 Q. B. Div. 339; Sutherland Stat. Con. § 288.

The rule has been recognized in Texas. *Cain v. State,* 20 Texas, 355, 362; *Shelby v. Johnson,* Dallam, 597; *Bryan v. Sundberg,* 5 Texas, 418; *Selman v. Wolfe,* 27 Texas, 68; *Hanrick v. Hanrick,* 54 Texas, 101.

Where the question is merely one of the construction of a state statute, which does not necessarily involve a Federal question the determination of the state court is conclusive upon this court. *Osborne v. Florida,* 164 U. S. 650, 656. But this court is not bound by state court decisions construing state statutes, where a Federal question is involved. See as to Federal citizenship: *Boyd v. Nebraska,* 143 U. S. 135. As to rights of Federal corporations: *Roberts v. Northern Pacific R. R. Co.,* 158 U. S. 1. As to impairing a contract: *Ohio Ins. & Tr. Co. v. Debolt,* 16 How. 416; *Bridge Proprietors v. Hoboken Co.,* 1 Wall. 116, 145; *Wright v. Nagle,* 101 U. S. 791; *Douglas v. Kentucky,* 168 U. S. 488, 501; *Bacon v Texas,* 163 U. S. 207;

*Louisville Gas Co.* v. *Citizens' Gas Co.,* 115 U. S. 683; *Mc-Gahey* v. *Virginia,* 135 U. S. 662; *Mobile & Ohio R. R.* v. *Tennessee,* 153 U. S. 486; *Chicago &c. R. R.* v. *Nebraska,* 170 U. S. 57; *McCullough* v. *Virginia,* 172 U. S. 102; *Vicksburg &c. R. R. Co.* v. *Dennis,* 116 U. S. 665; *Bryan* v. *Board of Education,* 151 U. S. 639; *L. & N. R. R.* v. *Palmes,* 109 U. S. 244. As to due process of law: *Scott* v. *McNeal,* 154 U. S. 34, 45. As to full faith and credit: *Huntington* v. *Attrill,* 146 U. S. 657, 683. And generally whether a Federal right is violated: *Yick Wo* v. *Hopkins,* 118 U. S. 356, 366; *Atchison &c. R. R. Co.* v. *Matthews,* 174 U. S. 96; *Gulf, Colo. &c. Ry. Co.* v. *Ellis,* 165 U. S. 150; *Norton* v. *Shelby County,* 118 U. S. 425, 439; *Gormley* v. *Clark,* 134 U. S. 338, 348; *Stutsman County* v. *Wallace,* 142 U. S. 293, 306; *Osborne* v. *Missouri Pacific Ry.,* 147 U. S. 248, 258. *Jefferson Bank* v. *Skelly,* 1 Black, 436, distinguished.

This case comes within the principle of these exceptions. This court cannot accept as conclusive the decision of the state court as to the scope, meaning and effect of this admitted exemption clause, effecting, when construed with the other statutes of the State, *in pari materia,* what is claimed to be an arbitrary classification of persons, in respect to the offense in question, in violation of the rights guaranteed by the Fourteenth Amendment. That, like the questions of due process of law, full faith and credit to which state judgments are entitled, and of the impairment of contract obligations is, essentially and necessarily, a question for the final and independent determination of this court.

Plaintiff in error is really asking this court not to controvert, but rather to lean towards, and follow, the state court on this subject.

Since the Anti-Trust Statutes are in contravention of the Federal Constitution they are absolutely void; and are ineffectual for any purpose against corporations as well as individuals. Cooley's Const. Lim., 5th ed., 224; *Reagan* v. *Trust Co.,* 154 U. S. 362; *West. Un. Tel. Co.* v. *State,* 62 Texas, 630.

The Supreme Court of Texas has refused to follow this court in *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, nor does *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28, support its decision. See *N. Y. Life Ins. Co.* v. *Cravens*, 178 U. S. 389.

The right of the State to forfeit defendant's license depends upon the conditions annexed expressly or by implication to the grant made by the license.     If the Anti-Trust Statutes were a part of the contract and have been violated, the forfeiture may be enforced, but if they were not, then they do not enter into the contract at all, but are mere *statutes*, not *contracts*, and their validity may be contested by this defendant, as well as by an individual.

While corporations are not "citizens," within the meaning of § 2, Art. IV, of the Federal Constitution, *Paul* v. *Virginia*, 8 Wall. 168; *Blake* v. *McClung*, 172 U. S. 239, yet they are "persons" within the meaning of the Fourteenth Amendment, and may invoke that provision against the taking of their property without due process of law, and the denial of the equal protection of the laws, *Santa Clara County* v. *Southern Pacific Ry. Co.*, 118 U. S. 394; *Covington Turnpike Co.* v. *Sandford*, 164 U. S. 578, 592; *Smythe* v. *Ames*, 169 U. S. 466, 522; and this is true of a foreign corporation which has obtained a license to transact business in the State.

A state statute which violates the Federal Constitution is not binding upon a corporation nor is it valid in any respect. *Dayton C. & I. Co.* v. *Barton*, 183 U. S. 23; *W. W. Cargill Co.* v. *Minnesota*, 180 U. S. 452; *Cable* v. *U. S. Life Ins. Co.*, 191 U. S. 288; *O'Brien* v. *Wheelock*, 184 U. S. 450; *South Ottawa* v. *Perkins*, 94 U. S. 267; *Doyle* v. *Insurance Co.*, 94 U. S. 535, distinguished, and see *Baron* v. *Burnside*, 121 U. S. 186.

While state legislation has been sustained against foreign corporations none of the cases are based on the ground that the only remedy sought by the State is forfeiture of corporate grants. *Fidelity Mutual Life Assn.* v. *Mettler*, 185 U. S. 308; *Iowa Ins. Co.* v. *Lewis*, 187 U. S. 335; *Farmers &c. Ins. Co.* v. *Dobney*, 189 U. S. 301; *Hale* v. *Lewis*, 181 U. S. 473; *Knox-*

*ville Iron Co.* v. *Harbison,* 183 U. S. 13; *Dayton Coal & Iron Co.* v. *Barton,* 183 U. S. 23; *Blake* v. *McClung,* 172 U. S. 239; *Ashley* v. *Ryan,* 153 U. S. 436; *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557; *Hooper* v. *California,* 155 U. S. 648; *Hancock Mutual Life Ins. Co.* v. *Warren,* 181 U. S. 73; *Mutual Life Ins. Co.* v. *Spratley,* 172 U. S. 602; *New York Life Ins. Co.* v. *Cravens,* 178 U. S. 389.

While the power of the State to impose terms upon a foreign corporation seeking admission was distinctly recognized yet these cases are clearly distinguished from *Connolly* v. *Union Sewer Pipe Co.,* and other cases in which this court has protected foreign corporations against unconstitutional state legislation.

The contention that a corporation may be bound by a statute which violates the Federal Constitution is unsound, dangerous and contrary to many decisions of this court. *Insurance Company* v. *French,* 18 How. 404; *Home Ins. Co.* v. *Morse,* 20 Wall. 445; *Barron* v. *Burnside,* 121 U. S. 186; *Southern Pacific Co.* v. *Denton,* 146 U. S. 202; *Barrow Steamship Co.* v. *Kane,* 170 U. S. 100, 111. See also *Chicago, M. & St. P. Ry. Co.* v. *Becker,* 32 Fed. Rep. 849; *Chattanooga R. & C. R. Co.* v. *Evans,* 66 Fed. Rep. 809, 814; *Reimers* v. *Seatco Mfg. Co.,* 70 Fed. Rep. 573. While these cases involved statutes which required foreign corporations, as one of the conditions imposed in granting the license, to refrain from removing such suits as might be brought against them, into the courts of the United States, that does not in any wise affect the principle. That provision is no more sacred than any other.

All of the Anti-Trust Laws of Texas are also in contravention of the Fourteenth Amendment for the reason that they necessarily deprive persons of liberty and property without due process of law, in that they deny all persons the right to make any contract, in the ordinary course of business and on ordinary business subjects, which tends to restrict competition or trade, commerce or business, or in any manner to affect prices. 2 Eddy on Comb. §§ 904 *et seq.*

The right of all persons to combine for the purpose of carrying on an ordinary business in the familiar and ordinary methods sanctioned by the continuous commercial usages of the Anglo-Saxon race and by the common law is one of the liberties protected by the Fourteenth Amendment and, as the corporation is in the State without conditions, to impair this liberty and the ability to conduct a merchandising or other business in the ordinary way, through the making of purchases and sales and the fixing of prices, is clearly to work a deprivation of property without due process of law, and to impair the well recognized liberty of contract, involved in the acquiring, using and dealing with property, protected by that amendment to the Federal Constitution. *L. S. & Mich. So. Ry. Co.* v. *Smith,* 173 U. S. 684, 691; *Louisville & Nashville R. R. Co.* v. *Kentucky,* 161 U. S. 677, 695; Freund on Police Power, § 715; *Ballard* v. *Miss. Cot. Oil Co.,* 81 Mississippi, 507, 581; 2 Eddy on Comb. §§ 660 *et seq.;* § 2 of the Texas Act of 1899; Rev. Stat., Texas, art. 5313; Penal Code, Texas, arts. 976, 988*a.* If the law should be enforced it would drive every partnership out of Texas. Parsons, 3d ed., 6; 1 Kent Com. 23; Lindley on Part., 4th ed., 3; *Queen Ins. Co.* v. *Texas,* 86 Texas, 250, 264; *Texas & Pacific Coal Co.* v. *Lawson,* 89 Fed. Rep. 394; *Matthews* v. *Ass'd Press,* 136 N. Y. 333; *Houck* v. *Anheuser-Busch,* 88 Texas, 184; *Welch* v. *Phelps &c. Co.,* 89 Texas, 653.

There is no basis for the assumption that the legislature could not have intended these results or effects, casting a blight over all business associations and combinations. The acts are plain and unambiguous in terms. Art. 9, Penal Code, Texas; *United States* v. *Fisher,* 2 Cranch, 358, 399; *McPherson* v. *Blacker,* 146 U. S. 1, 27.

For other cases on the construction of the Texas Act, see *Gates* v. *Hooper,* 90 Texas, 563; *Texas Brewing Co.* v. *Templeman,* 90 Texas, 277; *Fugua* v. *Pabst Brewing Co.,* 90 Texas, 298; and of similar statutes in other States, see *Commonwealth* v. *Bavarian Brewing Co.,* 66 S. W. Rep. 1016; *Am. Handle*

*Co.* v. *Standard Handle Co.,* 69 S. W. Rep. 709, 717; *Ertz* v. *Produce Exchange,* 84 N. W. Rep. 743; *Anderson* v. *United States,* 171 U. S. 604. And see where exclusive contracts to sell were held good, *Williams* v. *Montgomery,* 148 N. Y. 519; *Brown* v. *Rounsavell,* 78 Illinois, 589; *Newell* v. *Meyendorf,* 9 Montana, 254. As to liberty of contract see *Allgeyer* v. *Louisiana,* 165 U. S. 578, 589; *Butchers' Union* v. *Crescent City Co.,* 111 U. S. 746, 762.

The liberty of pursuit is one of the privileges of a citizen of the United States. *Bertholf* v. *O'Reilly,* 74 N. Y. 509; *In re Jacobs,* 98 N. Y. 98; *People* v. *Marx,* 99 N. Y. 377; *People* v. *Gillson,* 109 N. Y. 389; *Forster* v. *Scott,* 136 N. Y. 577; *Purdy* v. *Erie R. R. Co.,* 162 N. Y. 42, 49; *Printing Co.* v. *Sampson,* L. R. 19 Eq. 462; *Godcharles* v. *Wigeman,* 113 Pa. St. 431; *Palmer* v. *Tingle,* 45 N. E. Rep. 313.

As to the so called truck store act, the coal weighing act, and other similar legislation held unconstitutional in Illinois, see *Frorer* v. *People,* 141 Illinois, 171; *Ramsey* v. *People,* 142 Illinois, 380; *Harding* v. *People,* 160 Illinois, 459; *Ritchie* v. *People,* 155 Illinois, 98; *Braceville Coal Co.* v. *People,* 147 Illinois, 66.

And in other States similar legislation has been pronounced unconstitutional because violating this fundamental constitutional right of freedom of contract. *Kuhn* v. *Detroit,* 70 Michigan, 534; *Spry Lumber Co.* v. *Trust Co.,* 77 Michigan, 199; *State* v. *Loomis,* 115 Missouri, 307; *State* v. *Julow,* 129 Missouri, 163; *State* v. *Goodwill,* 33 W. Va. 179; *Ex parte Kuback,* 85 California, 274; *Low* v. *Rees' Printing Co.,* 41 Nebraska, 127; *In re Eight Hour Law,* 21 Colorado, 29; *Commonwealth* v. *Perry,* 155 Massachusetts, 117; 2 Eddy on Comb. §§ 660–673.

The legislature cannot under pretense of exercising its police power prohibit harmless acts not immediately concerning the health and welfare of the people, and all such acts are subject to judicial examination and possible condemnation. 22 Am. & Eng. Ency. of Law, 936; *People* v. *Gillson,* 109 N. Y.

389, 400; 2 Tiedeman, Police Powers, § 1, and pp. 197, 233; *Colon* v. *Lisk,* 153 N. Y. 188, and cases cited; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 558; *Opinions of Justices*, 163 Massachusetts, 596; *Anderson* v. *United States*, 171 U. S. 604.

As to history of anti-monopoly laws, see Thorold Roger's Economical Interpretation of History, referring to statutes of 37 Edw. III, fixing prices; also as to wages, 23 Edw. III, 1349; 34 Edw. III, 1360; also statutes of 3 Hen. IV, C. 1; 15 Hen. IV, C. 6; 5 Eliz., C. 4; 5 & 6 Edw. VI, C. 14. See also instances in Pickering's Statutes; see also Albert Stickney on State Control of Trade and Commerce, citing Stat. of 7 & 8 Vict., C. 24; Law of Criminal Conspiracies and Agreements, by R. S. Wright, p. 12, n. 6. As to the right to form partnerships, see *Mitchel* v. *Reynolds*, 1 Smith L. C. 511, and as to early cases under the Buttle Act against joint-stock companies, see Lindley on Partnership, 6. For American cases in regard to restriction of commerce and right of persons to associate for business purposes, see *Hooker* v. *Vandewater*, 4 Denio, 349; *People* v. *Fisher*, 14 Wend. 9; *Stanton* v. *Allen*, 5 Denio, 434; *Commonwealth* v. *Carlisle*, Brightly, 36; *Central Ohio Salt Co.* v. *Guthrie*, 35 Ohio St. 666.

As to cases of contracts between competing companies which did not unite their capital, skill or acts, but only agreed as to prices and production and the pooling of their receipts, see *United States* v. *Trans-Missouri Freight Association*, 58 Fed. Rep. 58, 70; *Emery* v. *The Ohio Candle Co.*, 47 Ohio St. 320; *Morris Run Coal Co.* v. *Barclay Coal Co.*, 68 Pa. St. 173; *India Bagging Association* v. *Kock & Co.*, 14 La. Ann. 168; *United States* v. *Jellico Coal Co.*, 46 Fed. Rep. 432; *Lumber Co.* v. *Hayes*, 76 California, 387; *Craft* v. *McConoughy*, 79 Illinois, 346; *Gibbs* v. *Gas Co.*, 130 U. S. 396.

As to distinctions between legal and illegal contracts in restraint of competition, see *Marsh* v. *Russell*, 66 N. Y. 288; *Phippen* v. *Stickney*, 3 Met. 384; *Lorillard* v. *Clyde*, 86 N. Y. 384; *Shade Co.* v. *Cushman*, 143 Massachusetts, 353; *Craft* v.

*McConoughy*, 79 Illinois, 346; *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; *Leslie* v. *Lorrilland*, 110 N. Y. 519, 534; *Matthews* v. *Associated Press*, 136 N. Y. 333; *Jones* v. *Fell*, 5 Florida, 510; *Railroad Tax Cases*, 13 Fed. Rep. 722, 743; *United States* v. *Addyston Pipe & Steel Co.*, 85 Fed. Rep. 271, 290. The cases decided by this court under the Federal Anti-Trust Act show that the liberty to contract is guaranteed by the Constitution and yields only to the paramount power of Congress over interstate commerce. *United States* v. *Joint Traffic Assn.*, 171 U. S. 505, 559; *Addyston Pipe & Steel Co.* v. *United States*, 175 U. S. 211; *Northern Securities Co.* v. *United States*, 193 U. S. 197, 351.

*Mr. C. K. Bell*, Attorney General for the State of Texas, for defendant in error in this case and in No. 38:

It has been held by the Supreme Court of the State of Texas that the laws of 1889 and 1895 were valid and constitutional enactments. But after *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, the decisions theretofore rendered by the appellate courts of Texas, upholding the laws mentioned so far as it was sought under them to collect penalties, were overruled and the laws held to be nugatory when penalties were sought to be collected for a violation of their provisions. The law of 1899 contained no exemption in favor of any class, and this law has been held by the Supreme Court of Texas, in *State* v. *Laredo Ice Co.*, 96 Texas, 461, to be a valid and constitutional enactment.

The questions in this case are, first, is the Anti-Trust Act of Texas of 1899 constitutional; and, second, conceding that the acts of 1889 and 1895 are not constitutional to the extent of warranting the collection of penalties for a violation of their provisions, is it within the power of the courts to forfeit the permit which authorizes a foreign corporation to transact business in the State of Texas for committing the acts which by such statutes they are prohibited from committing under penalty of forfeiting such permits?

The first question has been answered by the Supreme Court of Texas in *State* v. *Laredo Ice Co.*, 96 Texas, 461, in the affirmative, and nothing can be added to the strength of the opinion in that case, and this court will follow the interpretation placed upon a statute of a State by its highest court.

As to the second question, the identical proposition has been decided in *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28; *Waters-Pierce Oil Co.* v. *State*, 19 Civ. App. 1; *State* v. *Shippers' Compress and Warehouse Co.*, 95 Texas, 603.

Mr. Justice McKenna, after stating the case as above, delivered the opinion of the court.

The charges made against the statutes of Texas are that they deny the oil company the equal protection of the law and take its property without due process of law. The answer to the first depends upon the effect of the statutes. The answer to the second involves their validity and broader considerations. We will deal with it first.

The specification in the demurrer of wherein the statutes deprive the oil company of its property without due process of law is indefinite and peculiar. It may be different from an attack on the validity of the statutes, but counsel have treated it as tantamount to such attack, and we will so treat it.

Defendant in error contends that it is not open to the oil company to attack the constitutionality of the statutes, either as discriminating against it or as depriving it of property without due process of law, and cites *Waters-Pierce Oil Company* v. *Texas*, 177 U. S. 28. Counsel for the company contests the application of that case; and we will assume (not decide) with them that it is not determinative of their contention.

The acts of 1889 and 1895 are set out at length in the *Waters-Pierce Oil Company case*. The act of 1899, so far as the present question is concerned, is substantially the same as those acts. All of the acts are directed to the prohibition of combinations to restrict trade, or in any way limit competition in the pro-

duction or sale of articles, or to increase or reduce their price in order to preclude a free and unrestricted competition in them. The various ways in which these purposes can be accomplished are enumerated and forbidden. Penalties are affixed to the violation of the acts, offending domestic corporations forfeit their charters, and offending foreign corporations forfeit their privileges to do business in the State.

There was also an act passed in 1903, which repealed all laws or parts of laws in conflict with it, and expressly repealed certain provisions of the Penal Code of the State, and the acts of 1895 and 1899. The right to recover penalties or to forfeit charters of domestic, or the permits of foreign, corporations, for acts committed before the going into effect of the statutes, was reserved.

The argument, which is directed against the validity of the statutes, is drawn from extremes. It is difficult to present its elements in a concise way. Its ultimate foundation is the right of individuals and corporations as well, under the Constitution of the United States, to make contracts and combine in business enterprises; and, it is argued, to prohibit them from so doing "in the ordinary way through the making of purchases and sales and the fixing of prices, is clearly to work a deprivation of property without due process of law and to impair the well recognized liberty of contract, involved in the acquiring, using and dealing with property," assured by the Federal Constitution.

To support the argument the usages and necessity of business are adduced, and partnerships and their effect are brought forward as illustrations. There are some things which counsel easily demonstrate. They easily demonstrate that some combination of "capital, skill or acts" is necessary to any business development, and that the result must inevitably be a cessation of competition. But this does not prove that all combinations are inviolable or that no restriction upon competition can be forbidden. To contend for these extremes is to overlook the difference in the effect of actions, and to limit too

much the function and power of government. By arguing from extremes almost every exercise of government can be shown to be a deprivation of individual liberty. It is commonplace to say that it is the purpose, and indeed duty, of government, to get all it can of good out of the activities of men, and limit or forbid them when they become or tend to evil. Of course, what is evil may not be always clear; but to be able to dispute the policy of a law is not to establish its invalidity. It is certainly the conception of a large body of public opinion that the control of prices through combinations tends to restraint of trade and to monopoly, and is evil. The foundations of the belief we are not called upon to discuss, nor does our purpose require us to distinguish between the kinds of combinations or the degrees of monopoly. It is enough to say that the idea of monopoly is not now confined to a grant of privileges. It is understood to include a " condition produced by the acts of mere individuals." Its dominant thought now is, to quote another, " the notion of exclusiveness or unity;" in other words, the suppression of competition by the unification of interest or management, or it may be through agreement and concert of action. And the purpose is so definitely the control of prices that monopoly has been defined to be " unified tactics with regard to prices." It is the power to control prices which makes the inducement of combinations and their profit. It is such power that makes it the concern of the law to prohibit or limit them. And this concern and the policy based upon it has not only expression in the Texas statutes; it has expression in the statutes of other States and in a well known national enactment. According to them, competition not combination, should be the law of trade. If there is evil in this it is accepted as less than that which may result from the unification of interest, and the power such unification gives. And that legislatures may so ordain this court has decided. *United States* v. *E. C. Knight Co.,* 156 U. S. 1; *United States* v. *Trans-Missouri Freight Association,* 166 U. S. 290; *United States* v. *Joint Traffic Association,* 171

U. S. 505; *Northern Securities Co.* v. *United States,* 193 U. S. 197; *Swift & Co.* v. *United States,* 196 U. S. 375.

In *Smiley* v. *Kansas,* decided at this term, 196 U. S. 447, a statute of Kansas is passed on which is identical in effect, and even in words, in all that concerns the present controversy, with the Texas statutes. The statute was assailed as "an unwarranted attempt upon the part of the legislature to limit the rights of the individual in the matter of contracting and dealing with his fellow-men." The right which Smiley claimed was to combine with certain grain dealers, persons, companies and corporations, who were competitors, to pool and fix the price of grain in the town of Bison, and to prevent competition in the purchase and sale of grain at that place. We followed the ruling of the Supreme Court of the State in holding that the combination was within the prohibition of the statute; we concurred with that court in deciding that the prohibition was a valid exercise of the police power of the State.

It follows that the statutes of Texas do not deprive the oil company of its property without due process of law.

Next, as to the effect of the statutes.

The act of May 25, 1899, omits the discriminatory provisions of the prior acts, but, it is contended, that as the latter act is declared to be cumulative of the prior acts their discriminations are preserved and continued, and that under the Code provisions the company may be criminally prosecuted, and that the excepted classes of the acts of 1889 and 1895 are exempt from prosecution. It is further urged whether such discrimination results from the statutes is for us to determine independently of what views the courts of the State may entertain of them and their relations.

Upon the last contention depends the mode of approaching the other, and we will dispose of it first. We cannot assent to it. There are cases in which we determine for ourselves the meaning of a state law, but this is not one of them. The contention of the company is that the statutes of the State discriminate against it; in other words, deny it the equal protec-

tion of the law, by forbidding it from doing what they permit others to do in similar circumstances—punish its acts and exempt from punishment the same acts when done by others. But the courts of the State are the tribunals appointed to administer the statutes and impose their penalties, and to do so they must necessarily interpret them. In other words, they are the tribunals to declare the meaning of the statutes, and if in declaring it they make the statutes discriminatory then may the statutes become unconstitutional. *Olsen* v. *Smith*, 195 U. S. 332.

What has the Supreme Court of Texas said of the statutes?

The Court of Civil Appeals in the case at bar expressed the following view:

"The trial court did not err in overruling appellant's demurrers. While it has been correctly held that certain provisions of the anti-trust statutes are unconstitutional, the Supreme Court, in the case of *The State of Texas* v. *The Shippers' Compress & Warehouse Co.*, 69 S. W. Rep. 61, relying upon the case of *The Waters-Pierce Oil Co.* v. *The State of Texas*, 177 U. S. 28, holds that so much of these statutes that authorize the canceling and forfeiture of a charter or permit to do business within the State of Texas are valid, and are not in violation of the constitution."

The Supreme Court refused a writ of error, and thereby, as we understand the local rule to be, approved the views of the Court of Civil Appeals. Subsequently the Supreme Court expressed itself explicitly in *State of Texas* v. *Shippers' Compress and Warehouse Company*, 95 Texas, 603, and *State of Texas* v. *Laredo Ice Company*, 96 Texas, 461.

The object in *State of Texas* v. *Shippers' Compress and Warehouse Company* was to forfeit the charter of the compress company for violating the Anti-Trust Law of 1895, in that the incorporators combined "to restrict aids to commerce." The law was attacked as unconstitutional. To the contention the court said:

"The defendant insists that the law is unconstitutional,

therefore void in whole, and will not support the action to forfeit the charter. Upon the same objection we held the Anti-Trust Law of 1889 to be constitutional, and there is no such difference between the two laws as would affect the decision of this question. We believe that our decision is correct; that the law is not in contravention of the constitution of the State nor of the United States. *Honck* v. *Brewing Assn.*, 88 Texas, 189."

The court then referred to *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, and in submission to its authority held the law of 1895, so far as it came within the terms of that case, invalid, and would not support an action by the State to recover a penalty for a violation of the law, nor would it, in suits between corporations and individuals, support a defense based upon the fact that the right of action originated in violation of the Anti-Trust Law. "But," the court remarked, "to the extent that the statute of this State is not embraced in the decision of the Supreme Court of the United States, we shall adhere to our former decision that it is constitutional and valid, and therefore enforcible by the State."

. That is, the court decided the act of 1895 was valid to the extent that it authorized the State to revoke the license of a foreign corporation and to forfeit the charter of a domestic corporation. The other provisions of the act were held invalid, and the right to make this distinction was based on *Waters-Pierce Oil Co.* v. *Texas*.

*State of Texas* v. *Laredo Ice Co.* was instituted to recover penalties for the violation of the Anti-Trust Law of 1899. The ice company was a domestic corporation, and it was proceeded against for having formed a combination to regulate and fix prices. In defense, the company asserted the unconstitutionality of the act.

It is provided in section 14 of the act of 1899 that the provisions of preceding sections and the fines and penalties provided for violations of the act shall be held and construed to be cumulative of all laws now in force in the State. It was

contended, as it is contended here, that this provision made one law of the act and the act of 1895, and that the exemptions of the latter became part of the former and made it unconstitutional. In other words, the effect was (we quote from the opinion of the court) "thereby to give exemption from prosecution under the law of 1899 to those persons who are exempted by the provisions of the law of 1895." The Supreme Court of Texas rejected the contention. Its reasoning was not very direct or circumstantial, but it in effect held that the act of 1899 did not continue the provisions of the prior acts, whether constitutional or unconstitutional, merely because it was declared to be cumulative. And the court decided the law of 1899 to be constitutional, because it did not contain the discriminating features of the prior laws. Under the laws of Texas, therefore, combinations of the kind described in the various anti-trust laws, whether by agriculturalists or organized laborers or others, are forbidden and penalized, and the oil company is not discriminated against.

But it may be said that if the inequalities of prior anti-trust acts have been removed by the act of 1899, they still remain in the Revised Statutes of the State and in the Penal Code, and by those Statutes and that Code the excepted classes are exempted from indictment and punishment, while the oil company is subject to both. We need not consider the Statutes referred to or consider how far this discrimination can exist, in view of the decision of the Supreme Court of the State in *State of Texas* v. *Laredo Ice Company.* Granting it can exist, the case at bar is not a criminal prosecution. It involves only the anti-trust laws and their prohibitions, and penalties. And in them, we have seen, by the effect of the act of 1899 there is no inequality of operation. It is the effect of that decision also that the laws of the State against combinations and trusts are formed into a harmonious system, of which the criminal provisions in other statutes and the Code are a part, and that their provisions can be adjusted and reconciled so as to have constitutional operation.

*Judgment affirmed.*