STATE OF MISSISSIPPI EX REL. ETC., v. LOUISVILLE & NASHVILLE RAILROAD COMPANY.

[51 South. 918; 53 South. 454.]

1. CORPORATIONS. *Foreign. Public policy. Injunctions.*

The state may enjoin the prosecution of a business conducted, within its borders by a foreign corporation, in violation of its public policy, and is not required to remain inactive and content itself with the recovery of penalties.

2. SAME. *Same. Same.*

In such case, however, an impending, threatened or continuing wrong, warranting an injunction, is not made out by a showing that a foreign railroad company, which has forfeited its right to do business in the state, will exercise the right of eminent domain when it becomes necessary to extend its lines of road and business.

3. FEDERAL SUPREME COURT. *When decisions binding. State courts.*

The decisions of the supreme court of the United States, defining rights under the federal Constitution, are binding on state courts.

4. CONSTITUTIONAL LAW. *Constitution of United States. Art. 4, sec. 2, clause 1. Fourteenth amendment. Citizens. Privileges and immunities. Corporations.*

> A corporation is not a citizen within Constitution of the United States, art. 4, sec. 2, clause 1, declaring that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states, nor the fourteenth amendment to said Constitution, prohibiting the states from making or enforcing any law abridging the privileges or immunities of citizens of the United States.

5. FOREIGN CORPORATIONS. *Right to do business.*

> A corporation, not in the service of the federal government, cannot do intrastate business in a state, other than the one of its creation, without its consent, and a state may impose such conditions as it sees proper upon the right of a foreign corporation to do such business within its limits; but cannot prevent it from carrying on interstate or foreign commerce.

6. SAME. *Same. Subsequent conditions.*

> A state admitting a foreign corporation to do business within its limits may subsequently exclude it, or change the conditions for the future, if in so doing it does not impair any right secured to the corporation by the federal Constitution.

7. SAME. *Same. Federal courts. Right of removal to.*

> A state may not exact of a foreign corporation, as a condition of its entering into the state to do business, a surrender of the right to remove causes to the federal courts; but it may provide that the removal of a cause to the federal court shall operate to forfeit its right to do intrastate business.

8. SAME. *Same. Same. Laws 1908, ch. 122, p. 131.*

> Laws 1908, ch. 122, p. 131, providing that a foreign railroad corporation engaged in business in this state shall forfeit its right to engage in intrastate commerce on removing any action against it in the state court to the federal court, is not invalid under the commerce clause of the federal Constitution, on the ground that the prohibition of intrastate commerce will affect injuriously the interstate commerce of the corporation, since the statute does not deal with the regulation of rates, but with the right to engage in domestic business.

9. CONSTITUTIONAL LAW. *Impairing obligation of contracts. Foreign corporation.*

A foreign corporation doing business in a state merely through comity or acquiescence, or under a license given without valuable consideration, has no contract binding the state not to exercise its power to exclude the corporation.

10. SAME. *Corporations. Power to repeal charters. Constitution 1890, sec. 178.*

The legislature, exercising the power reasonably and in good faith, can extinguish the existence of a corporation, under Constitution 1890, sec. 178, providing that it may alter, amend or repeal charters of incorporation without injustice to stockholders.

11. SAME. *Due process of law. Laws 1908, ch. 122, p. 131. Foreign corporation. Removal to federal court.*

The enforcement of Laws 1908, ch. 122, p. 131, providing that a foreign corporation engaging in business in the state which shall, when sued in a state court, remove the action to the federal court, shall be prohibited from engaging in intrastate commerce within the state, does not deprive a foreign railroad corporation, engaged in business in the state, and having within the state a line of railroad with stations and other property adapted to railroad purposes only, of its property without due process of law.

12. SAME. *Police power. Extent.*

The police power of a state is not limited to the suppression of what is disorderly, unsanitary, or offensive, but embraces regulations designed to promote the public convenience.

13. SAME. *Same. Same.*

The power of the state to adopt a statute providing that a foreign corporation engaging in business in the state shall forfeit its right to engage in intrastate commerce on removing an action against it to the federal court, must be referred to the power to promote the convenience of the people of the state within the police power, and the enforcement of a statute enacted under the police power, forfeiting the rights of a foreign corporation to continue in business in the state, though disastrous in consequences to the corporation, is not depriving it of property without due process of law.

14. SAME. *Equal protection of the laws. Foreign corporation.*

A foreign corporation lawfully in a state with its property, and lawfully doing business there, is entitled to protection against discrimination under the laws of the state; and during the lawful continuance in the state a foreign corporation is entitled to the equal protection of the laws.

15. SAME. *Same. Forfeiture of rights. Laws 1908, ch. 122, p. 131.*

The chancery court, enforcing Laws 1908, ch. 122, p. 131, prohibiting a foreign corporation engaged in business in the state from engaging in commerce within the state on its removing an action in the state court against it to the federal court, must afford every protection to the rights of the corporation or its stockholders which they are entitled to under the fundamental law or general equity principles.

16. SAME. *Constitution 1890, sec. 184. Corporations.*

Constitution 1890, sec. 184, making railroads common carriers, and imposing duties on them, does not limit the power conferred to repeal charters of railroads or forfeit their franchises, and does not limit the power of the state in its control over the admission and exclusion of foreign corporations.

17. SAME. *Statutes. Construction.*

A statute, clearly susceptible of two constructions, one rendering it unconstitutional, should be given the construction which will render it constitutional.

18. SAME. *Equal protection of the laws. Laws 1908, ch. 122, p. 131.*

Laws 1908, ch. 122, p. 131, providing that a foreign public service corporation, which removes a suit to a federal court or institutes a suit therein which it could not maintain if it were a domestic corporation, shall forfeit its right to do business, is not unconstitutional, as discriminating against such corporations, or as denying them equal protection of the laws.

19. STATUTES. *Clerical error. "Not" eliminated.*

The word "not" in Laws 1908, ch. 122, p. 131, providing that a foreign public service corporation, which removes a suit to a federal court, or institutes a suit therein which it could not maintain if it were "not" a domestic corporation, shall forfeit its right to do intrastate business, etc., must be disregarded as a clerical error.

20. SAME.   *Construction.   Qualifying clause.*

    A qualifying clause, following several clauses, may be applied to all of them, if applicable, or to the last only, as best accords with the purpose and spirit of the act.

21. SAME.   *Same.*

    In Laws 1908, ch. 122, p. 131, providing that the foreign public service corporation which removes a suit to a federal court or institutes a suit therein "which it could not maintain if it were a domestic corporation" shall forfeit its right to do intrastate business, etc., the quoted clause refers to both of the preceding clauses, making the statute to mean that, if such corporation removes a cause which it could not remove if it were a domestic corporation, or if it institutes any suit in a federal court which it could not institute if it were a domestic corporation, forfeiture will follow, and that the act is not aimed solely at the act of removal, or the act of suing, but at the grounds of removal or jurisdiction.

FROM the chancery court of Hancock county.

HON. THADDEUS A. WOOD, Chancellor.

The state, on the relation of R. V. Fletcher, attorney-general, appellant, was complainant in the court below; the railroad company, appellee, was defendant there.   From a decree sustaining defendant's demurrer to the bill of complaint and dismissing the suit, the complainant appealed to the supreme court.   The facts are fully stated in the opinion of the court.

*Anderson & Long* and *J. B. Stirling,* attorney-general, for appellant.

*Gregory L. Smith* and *Green & Green,* for appellee.

[Counsel on both sides argued the case fully and elaborately in their briefs, but the reporter has been unable to procure the briefs on either side, hence no synopses of them are given.]

Argued orally by *W. D. Anderson,* for appellant, and by *Gregory L. Smith,* and *Marcellus Green,* for appellee.

ALEXANDER, Special Judge,* delivered the opinion of the court.

The state of Mississippi, by the attorney-general, R. V. Fletcher, filed the bill herein against the Louisville & Nashville Railroad Company, a foreign corporation, to enjoin it from engaging further in intrastate commerce in this state because of its action in removing a cause to the United States circuit court in violation of chapter 122 of the Laws of 1908. This statute (Laws 1908, p. 131) is as follows:

"An act prescribing the terms and conditions on which foreign public service corporations shall engage in business in this state, and fixing penalties for violation of same.

"Section 1. Be it enacted by the legislature of the state of Mississippi, that any foreign railroad, sleeping car, electric railway, telegraph or telephone corporation, or other public service corporation whatsoever, now engaged in business in this state, or which may come into the state hereafter, and engage in business here, which shall, when sued in any court of this state, remove such cause to a federal court of this state, or which shall institute any suit in a federal court of this state, which it could not maintain if it were not a domestic company incorporated and organized under the laws of this state, shall:

"(*a*) Forfeit its right to, and be prohibited from engaging in intrastate commerce within this state;

"(*b*) Forfeit its right of eminent domain, and be prohibited from further exercising the same in this state.

"And any such corporation so removing a cause to the federal court, or instituting a suit therein, and which shall thereafter continue to engage in intrastate commerce within this state, shall forfeit not less than two hundred dollars nor more than five

---

* Anderson, J., being disqualified, having been of counsel in the case before his appointment to the bench, recused himself and C. H. ALEXANDER, Esq., a member of the supreme court bar, was selected and presided in his place.

thousand dollars for every such offense, and each day such corporation shall continue to so engage in such commerce shall be a separate offense; the penalty in such case to be recovered by an action in the name of the state, at the relation of the attorney general, or any district attorney in whose district such offense may occur, and when so recovered shall be paid into the state treasury.

"Section 2. That this act take effect and be in force from and after its passage."

The cause comes to this court on an appeal by the state from a decree sustaining a demurrer to the bill and dismissing the suit.  The facts as set out in the bill are that the Louisville & Nashville Railroad Company is a corporation organized under the laws of Kentucky, owning and operating a line of railway through the states of Kentucky, Tennessee, Alabama, and Mississippi; that it is a common carrier engaged in the business of transporting freight and passengers for hire through and in the state of Mississippi, and has in this state a number of stations where trains are regularly stopped for receiving and discharging freight and passengers; that its business is in part interstate commerce; that in August, 1908, the state of Mississippi and the Mississippi railroad commission filed a suit in the chancery court of Hancock county against the said Louisville & Nashville Railroad Company to enjoin it from disobeying an order of the commission relative to the stopping of trains at Bay St. Louis, in said county; that the said defendant company appeared in said suit, and by appropriate proceedings removed the same to the United States circuit court for the southern division of the southern district of Mississippi; that notwithstanding such removal defendant continues to engage in intrastate commerce in this state, and will as its business and its lines are extended exercise the right of eminent domain.  The prayer of the bill is for a decree that the defendant has forfeited its right to do any intrastate business within this state, or exercise the right

of eminent domain, and for a perpetual injunction against further engaging in such business and against exercising the right of eminent domain, and that the state recover of defendant penalties in such amount as the court shall adjudge not less than $200 nor more than $5,000 for each day that it has continued to engage in intrastate commerce in this state after such removal of the cause to the United States court. The railroad company demurred to the bill as a whole on the ground that the chancery court is without jurisdiction to adjudge the forfeiture or enforce penalties, and on the ground that there is no valid law forfeiting the right of the defendant to do intrastate business in the state because of having removed a cause to the United States circuit court. The chancery court sustained the demurrer, and dismissed the bill, but recited in the decree that the court was of the opinion that it had jurisdiction of the cause, but that in its view the statute in question is unconstitutional. From this decree the state appeals, and assigns for error the action of the court in sustaining the demurrer.

The preliminary question of jurisdiction presents little difficulty. We have no hesitation in holding that a sovereign state can resort to its court of equity to enjoin the continued prosecution of a business sought to be conducted within the state by a foreign corporation in alleged violation of the public policy of the state. Assuming that the continuance of such business of intrastate commerce is violative of such public policy as declared in the statute, it was not incumbent on the state to remain inactive and be content with the recovery of penalties after they had been incurred. "The restraining power of equity extends through the whole range of rights and duties which are recognized by the law, and would be applied to every case of an intended violation were it not for certain reasons of expediency and policy which control and limit its exercise." 3 Pomeroy, Eq. Jur. § 1338. These reasons of expediency confine the jurisdiction to cases in which the legal remedy is not

full and adequate.  Ib.  The nature and scope of this juris-
diction when invoked by the executive authorities of the gov-
ernment was discussed at great length, and the precedents, both
English and American, reviewed in the case of *Re Debs,* 158
U. S. 584, 15 Sup. Ct. 906, 39 L. Ed. 1092, in which the court,
responding to the objection that the government had no property
interest in the mails, the protection of which was one of the
purposes of the bill for injunction filed by the United States,
said: "Every government, intrusted by the very terms of its
being with powers and duties to be exercised and discharged for
the general welfare, has a right to apply to its own courts for
any proper assistance in the exercise of the one and the dis-
charge of the other, and it is no sufficient answer to its appeal
to one of those courts that it has no pecuniary interest in the
matter.  The obligation which it is under to promote the inter-
est of all, and to prevent the wrongdoing of one resulting in
injury to the general welfare, is often of itself sufficient to give
it a standing in court."  The averments of the bill are not
sufficient to warrant the intervention of equity to prevent the
exercise of the right of eminent domain.  The allegation that
defendant will exercise such right when it becomes necessary in
order to extend its lines of road and business falls short of show-
ing any impending, threatened, or continuing wrong calling for
the extraordinary writ of injunction.

We are thus brought to a consideration of the principal ques-
tion, viz.: Is the act of 1908 valid as applied to a foreign rail-
road corporation owning and operating a line of railroad in this
state and engaged here in both interstate and intrastate com-
merce; or, to state the case as it is somewhat more narrowly
presented by this record: Where a foreign railroad company has
been permitted to enter this state and acquire its right of way
and build and equip its railroad, and has for many years used
the same in both domestic and interstate transportation, can the
state forfeit its right to further engage in intrastate commerce

because it exercises the right secured to it by the Constitution and laws of the United States of removing a suit from a court of the state to the circuit court of the United States? So far as we can ascertain, the precise question has not been before the supreme court of the United States—the tribunal whose decision, so far as it defines rights claimed under the federal Constitution, is binding on us. There are, however, several principles more or less influential in the solution of the question which have been authoritatively established by that court. That a corporation is not a citizen within the meaning of article 4, § 2, declaring that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states, is now too well settled to need citation of authorities. Equally well established is it that a corporation is not a citizen within the meaning of the fourteenth amendment of the Constitution declaring that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. As a corollary from the above proposition, it is settled by an unbroken line of decisions, beginning with *Bank of Augusta v. Earle,* 13 Pet. 519, 10 L. Ed. 274, that a corporation cannot do business in a state other than that of its creation without the consent of that state express or implied; and a state may prescribe the conditions on which it will permit a foreign corporation to carry on business within the state. The only limitation upon the power of a state to exclude such corporations is where they are engaged in some service for the federal government or in interstate or foreign commerce. *Pembina Consol. Silver Mining Co. v. Pennsylvania,* 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650. And the power to exclude includes the right to allow a conditional or restricted exercise of its corporate powers within a state. Ib. Even after admitting a foreign corporation, a state can exclude it or change the conditions for the future, provided, of course, in doing so it does not impair any right secured to it by the United States Con-

stitution. *Fire Association v. New York,* 119 U. S. 110, 7 Sup. Ct. 108, 30 L. Ed. 342. We could multiply indefinitely citations in support of the foregoing propositions, but we do not understand that they are controverted.

The question of the validity of state statutes providing that the right of a foreign corporation to further engage in business in the state shall terminate if it removes a suit brought against it in the state court to the United States court is one that has often been considered by the United States supreme court. By quite a long line of decisions beginning with *Home Ins. Co. v. Morse,* 20 Wall. 445, 22 L. Ed. 365, and culminating in *Security Mutual Life Ins. Co. v. Prewitt,* 202 U. S. 246, 26 Sup. Ct. 619, 50 L. Ed. 1013, it is now settled beyond all controversy that, while a state may not exact of a foreign insurance corporation as a condition of entering into the state and continuation to do business therein a contract to surrender the right of removal of causes to the federal courts, it may nevertheless validly enact that if such corporation shall remove a case to the federal court its right to further do business in the state shall cease. In other words, the state cannot exact an agreement in advance that the corporation will not remove a cause, but may compel the corporation to abstain from the federal courts or else cease to do business in the state. The reasoning on which this conclusion is based may be summed up in the following clause of the opinion in *Security Mutual Ins. Co. v. Prewitt, supra:* "As a state has power to refuse permission to a foreign insurance company to do business at all within its confines, and as it has power to withdraw that permission when once given without stating any reason for its action, the fact that it may give what some may think a poor reason or none for a valid act is immaterial."

This and other broad statements in the opinion in the *Prewitt case* seem to have been qualified in *Western Union Tel. Co. v. Kansas,* 216 U. S. 1, 30 Sup. Ct. 190, which held, in keeping

with former adjudications, that the imposition by the state
of Kansas of a tax of one-twentieth of one per cent. of all
the authorized capital of a foreign telegraph company en-
gaged in the state in both interstate and intrastate commerce
would be unconstitutional as a regulation of interstate com-
merce, and that the statute of Kansas exacting such a tax as
a condition of continuing to do intrastate business in that state
was unconstitutional. Four of the judges dissented, and the
dissenting opinion characterizes the opinion of the majority as
a regrettable departure from the decision in the *Prewitt case.*
This court is not concerned with the weight of reasoning that
led that high tribunal to its conclusion; but we are concerned
to ascertain as nearly as possible from these cases the measure
and limit of the power of the state in excluding foreign cor-
porations. The conflict between the two decisions seems to us
more apparent than real. The later case is another illustration
of the doctrine that the right of a state to exclude a foreign
corporation cannot be exercised in such way as to violate the
fundamental law contained in the federal Constitution. By the
statute held constitutional in the *Prewitt case,* the state of Ken-
tucky in effect said to the foreign company: "As a foreign cor-
poration, you have the option to resort to the federal courts in
this state; if you avail of this right, the state will exercise its
right to exclude you from doing business in the state," a right
which the state admittedly has. By the statute in *W. U. Tel.
Co. v. Kansas,* the state in effect said to the telegraph company,
you may continue to engage in intrastate commerce in this state
if you agree that the state may exercise the power to tax your
interstate commerce—a power expressly denied to the state. It
would seem to have been a sufficient answer to the contention of
the state in the Kansas case to say that the power denied to a
state by the Constitution of the United States cannot be acquired
in any way, even by the assent of the corporation seeking ad-
mission; that the state and the corporation are not alone inter-

ested in confiding to congress alone the power to regulate inter-
state commerce, but that the "people of the United States" who
"ordained and established" the Constitution for their benefit are
equally interested; that just as resort to the federal court was
held in the case of *Barron v. Burnside,* 121 U. S. 186, 7 Sup.
Ct. 931, 30 L. Ed. 915, could not be made the subject-matter
of a contract between the state and the foreign corporation, so
the right of congress to regulate interstate commerce could not
be taken from it and conferred on a state by a contract or by
acquiescence.   The decision in the case of *W. U. Tel. Co. v.
Kansas,* in so far as it holds that a state cannot acquire or ex-
ercise the right to regulate interstate commerce even as a con-
dition of admission of a foreign corporation, was a clear illus-
tration of the rule which the supreme court had clearly an-
nounced in *Addyston Pipe & Steel Co. v. U. S.,* 175 U. S. 211,
20 Sup. Ct. 96, 44 L. Ed. 136, in which it said: "The power of
congress over this subject (interstate commerce) seems to us
much more important and necessary than the liberty of the
citizen to enter into contracts of the nature above mentioned free
from the control of congress because the direct results of such
contracts might be the regulation of commerce among the states,
possibly quite as effectually as if a state had passed a statute
of like tenor as the contract.   The liberty of contract in such
case would be nothing more than the liberty of doing that which
would result in the regulation, to some extent, of a subject
which, from its general and great importance, has been granted
to congress as the proper representative of the nation at large."
The rule finds another illustration in *Ludwig v. W. U. Tel. Co.,*
216 U. S. 146, 30 Sup. Ct. 280.

It is to be observed that the demurrer to the bill does not
sufficiently point out the provisions of the state and federal
Constitutions which the act of 1908 is thought to violate.   It
merely avers that there is no valid law forfeiting the right of
the railroad company to engage in intrastate commerce.   We are

thus left to the briefs and arguments of counsel to ascertain the particular provisions of the Constitution invoked. These provisions are those which withhold from the power of the states the regulation of interstate commerce, the impairment of contracts, and the deprivation of property without due process of law. Appellee does not contend that the state could not charter a common carrier and afterwards, for nonuser or misuser or for any sufficient ground, forfeit its charter, even although the railroad company be engaged in interstate commerce or carrying the United States mails. The argument is that the prohibition of intrastate commerce must affect injuriously the interstate commerce of appellee; that the whole earnings of the road from all sources must be taken as the basis for measuring the reasonableness of its interstate rates and the deprivation of all profit from domestic business would necessarily reduce the gross earnings. We cannot assent to this reasoning. The statute does not deal with the regulation of rates, but with the right to engage at all in domestic business in the state. No question of the state's power over rates is directly or indirectly involved. But, if it were, a state is not deprived of its power of control over domestic corporations because its action within the sphere of its powers may indirectly affect interstate commerce. *Louisville & Nashville R. Co. v. Ky.,* 183 U. S. 503, 22 Sup. Ct. 95, 46 L. Ed. 298. It may be a matter of great practical difficulty to separate the intrastate business of a carrier from its interstate business, a difficulty experienced in executing all state as well as the federal legislation regulating the business of carriers. The act of 1908 is explicit in limiting the prohibition to intrastate business of the corporations, and on its face it cannot be held void under the commerce clause of the federal Constitution unless we are prepared to go to the length of holding that a state altogether loses the right to exclude or regulate any foreign corporation whenever a part of its business is interstate commerce. The reserved right of the state to control the purely

domestic business of a carrier is as sacred and to be as jealously guarded as the granted right of congress to regulate its interstate business. It can with no more reason be held that the power of the state is lost because of the practical difficulty of severing the two kinds of commerce than it can be said that the power of congress is lost for the same reason. The difficulty is one of administration and not of power. *Chicago R. R. Co. v. Cutts,* 94 U. S. 155, 24 L. Ed. 94; *Osborne v. Florida,* 164 U. S. 650, 17 Sup. Ct. 214, 41 L. Ed. 586.

The record before us presents no question under the contract clause of the federal Constitution. It certainly cannot be contended in the light of the authorities that where a foreign corporation is doing business in a state merely through comity or acquiescence or even under a license given without valuable consideration there is a contract binding the state not to exercise its power to exclude. It is true that if the entry into the state was under a statute prescribing certain terms and conditions which were met and in return for which the corporation was given the right for a certain time to do business in the state a contract would arise that might not be violated by the state. Such was the holding in *American Smelting Co. v. Colorado,* 204 U. S. 115, 27 Sup. Ct. 198, 51 L. Ed. 393. We are not cited to any contract or action under any statute having the force of a contract by or under which the appellee was originally admitted or permitted to continue in business in the state.

The next and quite the most serious contention of the appellee is that the enforcement of the prohibition contained in the act of 1908 would have the necessary effect of depriving it of its property without due process of law. More fully stated appellee's position is this: That it has within the state a line of railroad with stations and other property devoted and adaptable only to railroad purposes; that it has for many years been lawfully engaged in this state in both domestic and foreign commerce, and that the value of this property will be largely de-

stroyed if it cannot be devoted to intrastate commerce. Stated in another form, the contention of appellee is that the power of a state to exclude a foreign corporation already doing business in the state is in a measure determinable by the nature and character of the property it has acquired and the uses to which it can be put; that where the property acquired and being used in the state is a railroad adaptable only to railroad uses its value would be destroyed by its exclusion from the state, and very greatly impaired by the prohibition of further intrastate business, and that this results in a violation of the due process clause of the Constitution. The objection is not that the act of 1908 is unconstitutional as applied to all foreign public service corporations, but only as to those which like railroads have their investments in the state in such form that great loss and detriment would result from enforcing the prohibition. The objection goes not so much to the power of the state as to the mode of its exercise. It can hardly be contended that the power which a state has to exclude at will a foreign corporation or to control them is less than its power over those of its own creation. It cannot exclude the one already admitted, nor repeal the charter of the other except in such way as not to confiscate property or destroy property rights. The legislative power to alter, amend, or repeal a charter gives the power of absolute extinguishment of the existence of the corporation (*Spring Valley Water Works Co. v. Schottler,* 110 U. S. 347, 4 Sup. Ct. 48, 28 L. Ed. 173), yet the power must be exercised reasonably and in good faith. "Sheer oppression and wrong cannot be inflicted under the guise of amendment or alteration. Beyond the sphere of the reserved powers, the vested rights of property of corporations, in such cases, are surrounded by the same sanctions and are as inviolable as in other cases." *Shields v. Ohio,* 95 U. S. 319, 24 L. Ed. 357.

But giving full effect to this salutory principle we cannot affirm that the necessary effect of enforcing the prohibition

against a foreign railroad company is to deprive of property without due process of law. In reply to a similar argument pressed upon the consideration of the United States supreme court in *United States v. Delaware R. Co.*, 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836, the court said: "In form of statement these contentions apparently rest upon the ruinous consequences which it is assumed would be operated upon the property rights of the carriers by the enforcement of the clause interpreted as the government construed it. For the purposes of our consideration of the subject it may be conceded, as insisted in behalf of the United States, that these contentions proceed upon the mistaken and baleful conception that inconvenience, not power, is the criterion by which to test the constitutionality of legislation."

In *Newport & Cincinnati Bridge Co. v. United States,* 105 U. S. 470, 26 L. Ed. 1143, the United States supreme court had before it the question whether the right of a railroad company to erect and maintain a bridge over a navigable stream, a franchise granted with a right of revocation, could be withdrawn without depriving the company of its property without due process of law. Responding to the argument the court said: "A withdrawal of the franchise might render property acquired on the faith of it, and to be used in connection with it, less valuable, but that was a risk which the company voluntarily assumed when it expended its money under the limited license which alone congress was willing to give. It was optional with the company to accept or not what was granted; but, having accepted, it must submit to the control which congress, in the legitimate exercise of the power that was reserved, may deem it necessary for the common good to insist upon. We are aware that this is a power which may be abused, but it is one congress saw fit to reserve. For protection against unjust or unwise legislation, within the limits of recognized legislative power, the people must look to the polls, and not to the courts. It would

be an abuse of judicial power for the courts to attempt to interfere with the constitutional discretion of the legislature."

The argument drawn *ab inconvenienti* is applicable to every forfeiture by a state of a charter and every prohibition of a continuance by a corporation of business in the state. The disaster, if such it is to be viewed, is not peculiar to railroad companies. The difference is one in degree only. We cannot assent to the idea that a corporation can secure exemption from forfeiture of its charter, or that a foreign corporation admitted into a state by its comity can transform that comity into a perpetual right by the mere extent or nature of its investments. Constitutional limitations upon the powers of the state do not have regard to the degrees of transgression. If a state cannot terminate the corporate existence of a domestic railroad corporation for any declared and recognized grounds of forfeiture, because the consequences to the corporation will be disastrous, then it would follow that it could not forfeit the charter of any corporation whatever, since every forfeiture must be attended with some loss. The force of this position seems to be appreciated by counsel for appellee, who concede that for violations of law and misuser forfeiture of charters may be enforced under the police power of the state, whereas it is argued the act of 1908 cannot be referred to that power of the state. We think in this view counsel have fallen into error. The police power of the state is not limited to the suppression of what is disorderly, unsanitary, or offensive, but embraces regulations designed to promote the public convenience. *Bacon v. Walker,* 204 U. S. 311, 27 Sup. Ct. 289, 51 L. Ed. 499; *Chicago, etc., R. Co. v. Illinois,* 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596; *L. S. & M. R. R. Co. v. Ohio,* 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed. 702.

It is obvious that the power of the state to enact legislation similar to that of the statute in question must be referred to the power to promote the convenience of the people of the state, and

it has been frequently decided that the enforcement of statutes enacted under the police power, forfeiting the right of foreign corporations to continue in business in a state, although disastrous in consequences to the corporation, is not depriving them of property without due process of law. *National Cotton Oil Co. v. Texas,* 197 U. S. 130, 25 Sup. Ct. 379, 49 L. Ed. 689; *Nat. Council v. State Council,* 203 U. S. 151, 27 Sup. Ct. 46, 51 L. Ed. 132; *Hammond Packing Co. v. Arkansas,* 212 U. S. 322, 29 Sup. Ct. 370, 53 L. Ed. 530. Whatever limits there are to the power and sovereignty of a state in excluding or controlling foreign corporations, those limits cannot be fixed or measured solely by the volume of their business, or the nature and amount of their investments.

Our attention is called to the case of *Southern R. R. Co. v. Greene,* 30 Sup. Ct. 287. The question, and the only question decided in that case, was stated in the opinion as follows: "When a corporation of another state has come into the taxing state, in compliance with its laws, and has therein acquired property of a fixed and permanent nature, upon which it has paid all taxes levied by the state, is it liable to a new and additional franchise tax for the privilege of doing business within the state, which tax is not imposed upon domestic corporations doing business in the state of the same character as that in which the foreign corporation is itself engaged?" The court, following the cases of *Gulf, C. & S. F. R. Co. v. Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666; *Cotting v. Kansas Stockyards Co.,* 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92; and *Connolly v. Union Sewer & Pipe Co.,* 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, held that where a railroad company had lawfully come into the state, and with its sanction established a business of a permanent character requiring for its prosecution a large amount of fixed and permanent property, it is a person within the jurisdiction of the state, and as such is entitled, under the equal protection of the law clause of the

fourteenth amendment to the United States Constitution, to protection against the imposition of privilege taxes for carrying on business within the state where no such tax is imposed upon domestic corporations carrying on a precisely similar business.

As we construe these decisions, the extent of their holding is that so long as the corporations are lawfully in the state with their property and lawfully doing business there, they are entitled to protection against discrimination under the laws. The cases cited do not deal with the right to exclude foreign corporations or to impose conditions on their continuing in the state. They merely hold that during their lawful continuance in the state they are entitled to equal protection of the laws. It seems to us that the argument for appellee resolves itself into this: That no condition can be imposed on the continuance in business in a state of a foreign corporation having property in the state unless at the same time the same condition is imposed on the continuance of the corporate existence of domestic corporations of the same kind. We are not willing to go to such a length. It would be impossible to apply that rule to the condition of removing a case to the federal court since the right of removal cannot be conferred or regulated by state laws, neither can all the grounds for removal by foreign and domestic corporations ever be the same. The statute in the *Prewitt case* applying as it did to foreign corporations alone could not have been upheld as constitutional if it had been requisite to its constitutionality that it be applied to domestic as well as foreign insurance companies.

But we cannot, even by silence, appear to assent to the proposition that in enforcing the prohibition of this statute the state is acting arbitrarily. The railroad company, when it entered the state and made its investments, and from time to time enlarged its operations, must be taken to have acted in full recognition of the suspended power of the state to impose conditions on its doing business in the state. It seems to have deliberately

measured the value of its constitutional right of resort in all cases to the United States court and the privilege of engaging in intrastate commerce in the state and made its choice.    The observations of the supreme court of the United States in discussing the dilemma of a corporation compelled to choose its course under a statute like the act of 1908 seems to us pertinent: "The embarrassment attaching to the complainant herein on account of a removal, if any, is one of its own creation.    As a condition upon which it was admitted to do business in the state, it voluntarily signed the application, in which it promised to accept a license according to the laws of Illinois, and agreed that the license should terminate in case the company should remove any action commenced in the state court to the United States court, as already stated.    We think the existence of these facts furnishes no ground for appealing to a federal court of equity to take jurisdiction of a suit to cancel the policy, where otherwise the court would have none.    The state statute could not prevent the removal.    If, because of a removal, ground was furnished for the revocation of the license, that fact would not justify a resort to a federal court, and ought not to, because, as we have said already, the contingency is one of the complainant's own creation, and it ought not, therefore, to be able to avail itself of an embarrassment which it has voluntarily created, as a foundation for jurisdiction in a federal court which would not otherwise exist."    No property right of appellee will be destroyed by enforcing this statute, and no injustice will result. Even the right to extinguish the life of a corporation by repealing its charter, a right expressly reserved by our Constitution (Const. 1890, § 178), can be exercised only in such way as to do no injustice to stockholders.    In the absence of such a provision the same protection would be accorded.    It cannot be doubted that the chancery court in enforcing the prohibition of this act, which is as to the business of the appellee only partial, will afford every protection to the rights of the corporation or

its stockholders which they are entitled to under the fundamental law or general equity principles.

To the objection that the act in question in so far as its prohibition is sought to be applied to a railroad company engaged in business in this state will be in conflict with section 184 of the Constitution of 1890, which makes railroads common carriers and imposes other duties on them, it is sufficient to say that this section was not meant to limit the power conferred and recognized elsewhere in the Constitution to repeal charters or forfeit their franchises. Nor can the section have any effect in limiting the power of the state in its control over the admission and exclusion of foreign corporations.

Having held as we did at the outset that the main ground of equity jurisdiction in this suit is the restraining of defendant from engaging further in intrastate commerce, we do not now decide whether, as incidental to this jurisdiction, the suit is maintainable also to collect penalties, and whether the penalties are so excessive as to amount to a denial of the equal protection of the laws within the principle announced in *Ex parte Young,* 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932. These features of the case do not seem to have received any separate consideration by the court below. We are not prepared to hold that the statute is unconstitutional on its face, because the penalties are excessive. Whether, as applied to the appellee, they will be so viewed can be more intelligently determined in the light of the facts when developed than on the record as now presented.

Reversed and remanded, with leave to answer in sixty days from the filing of the mandate in the court below.

*Reversed.*

WHITFIELD, C. J., delivered the following dissenting opinion.

I dissent from the opinion and judgment of the majority of the court in this case. I do not, however, care to elaborate on

my views, but merely state in the briefest possible way my views in outline. I do not think that access to the federal courts by a foreign corporation which has been permitted to enter the state to do interstate and intrastate business within the state for many years can be denied or burdened in the way in which that is done by the statute in question. The statute provides as a punishment for such foreign corporation, first, that it shall forfeit its rights to and be prohibited from engaging in intrastate commerce within this state; second, that it shall forfeit its right of eminent domain, and be prohibited from further exercising that right in this state; and, third, that a penalty of not less than $200 nor more than $5,000 shall be visited upon such corporation for every such offense, and that each day such corporation shall continue to so engage in such commerce shall be a separate offense, within the principles announced in *Ex parte Young,* 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932. I think the penalty inflicted by the statute, as well as the forfeiture of the right to do intrastate business, and the forfeiture of the right of eminent domain, amounts practically to a denial of the right to remove cases by the appellee to federal courts in this state.

It is said in the opinion in chief that, "while a state may not exact of a foreign insurance corporation, as a condition of entering into the state and continuation to do business therein, a contract to surrender the right of removal of causes to the federal courts, it may nevertheless validly enact that if such corporation shall remove a case to the federal court its right to further do business in the state shall cease. In other words, the state cannot exact an agreement in advance that the corporation will not remove a cause, but may compel the corporation to abstain from the federal courts or else cease to do business in the state"—citing the case of *Security Ins. Co. v. Prewitt,* 202 U. S. 246, 26 Sup. Ct. 619, 50 L. Ed. 1013.

It seems to me that the distinction stated is one without a

difference.    The argument of the majority of the court is that there is no contract between the state and the foreign corporation not to remove its causes to the federal court, and this statute merely leaves it optional with the foreign corporation to remove its causes or not.    It is said that the statute does not in terms forbid the removal, but merely leaves the foreign corporation to remove or not at its pleasure.    I cannot concur in this view of the statute.    In my judgment the necessary and inevitable effect of this statute is just as clearly to forbid the removal of causes to the federal court as if such prohibition had been written in express terms on the face of the statute.    The alternative of removal is just as effectually prohibited by the penalties and punishments of this statute as if the act had consisted of one section merely prohibiting such removals.    The distinction as it seems to me, with all deference to my Brethren, has no real existence; it is the shadow without the substance, and is too unsubstantial for the practical administration of justice.    I conclude, therefore, that this act does necessarily deprive the appellee of its property without due process of law, in violation of the fourteenth amendment of the Constitution of the United States.

After the delivery of the foregoing opinions the counsel for appellee presented an elaborate suggestion of error.

Alexander, Special Judge, delivered the following response to the suggestion of error:

Since the rendition of the opinion in this cause, the supreme court of the United States has handed down an opinion in *Herndon v. Chicago & Rock Island R. R. Co.*, 218 U. S. 135, 30 Sup. Ct. 633, and appellee in a suggestion of error invokes it as decisive against the constitutionality of the statute of 1908 (Acts 1908, c. 122).    One question in that case was whether the Missouri statute denied to foreign corporations within

its jurisdiction the equal protection of the laws, and it was necessary first to determine whether the foreign railroad corporation was within the jurisdiction of the state. On this question the court said: "The corporation was within the state, complying with its laws, and had acquired, under the sanction of the state, a large amount of property within its borders, and thus had become a person within the state, within the meaning of the Constitution, and entitled to its protection." The court then, proceeding to the inquiry whether the Missouri statute denied to the foreign corporation the equal protection of the laws, said: "Under the statute in controversy a domestic railroad company might bring an action in the federal court, or in proper case remove one thereto, without being subject to the forfeiture of its rights to do business or to the imposition of penalties provided for in the act." And because of this discrimination the statute was held to be unconstitutional. If the Mississippi act in question be held similar to that of Missouri, we will be compelled to hold it unconstitutional as applied to the appellee.

This brings us to the question of the construction of the act of 1908. The most casual reading of the act discloses an obvious clerical error in the insertion of the word "not" in the clause "which it could not maintain if it were *not* a domestic corporation." Since the interpolation of this word renders the provision meaningless and self-destructive, we are compelled, in order to give some effect to the clause, to hold that the word crept into the act through a clerical error. To speak of a foreign corporation exercising a right which it could not maintain if it were *not* a domestic corporation involves a contradiction in terms; and, looking to the obvious meaning of the whole statute, to the context, and to the grammatical construction of the clause itself, we hold that the word "not" must, under well-settled rules of statutory construction, be read out of the statute. *Bobo v. Commissioners,* 92 Miss. 792, 46 South. 819; 26 Am. & Eng.

Enc. Law, 655. Thus read, we fail to find anything in the act that discriminates against foreign corporations in favor of similar domestic corporations. If the statute should be construed to apply to every case of removal to the United States court by foreign public utility corporations, even where domestic corporations of the same kind could, without incurring penalties, do so, we would not hesitate to declare the act unconstitutional, because discriminating against foreign corporations. Such a result would follow if we should hold that the clause "which it could not maintain if it were (not) a domestic company," etc., qualified only the last preceding clause as to the institution of suits in a federal court, and had no reference to the preceding clause as to removal of causes. But no principle of statutory construction is better settled than the rule that where a statute is fairly susceptible to two constructions, one of which would render it unconstitutional, the courts will adopt that construction which will render it constitutional. *Beck v. Allen,* 58 Miss. 143; *Virden v. Bowers,* 55 Miss. 1; *Burnham v. Sumner,* 50 Miss. 517; *Hooper v. California,* 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297. And the rule is that a qualifying clause following several clauses may be applied to all of them, if applicable, or to the last only, as best accords with the purpose and spirit of the act. 26 Am. & Eng. Enc. Law, 613.

We hold, therefore, that the qualifying clause refers to both the preceding clauses, and the true meaning is that if the foreign public utility corporation removes a cause which it could not remove if it were a domestic corporation, or if it institutes any suit in a federal court which it could not institute if it were a domestic corporation, the forfeiture denounced by the statute will be incurred. As persuasive of this view of the legislative intent that the act does not apply to any and every removal to the United States court, the subsequent clause of the statute imposes the forfeiture or penalties on any such corporation *so re-* moving a cause, thus implying that not every removal will sub-

ject it to the operation of the act. And, further, it must not be forgotten that under the present federal statutes removal to the federal court can be had only where that court would have original jurisdiction of the suit. We think the statute is not aimed solely at the act of removal, or the act of instituting a suit, but at the grounds of removal or jurisdiction; and, thus construed, the foreign corporation will not be affected by the statute so long as it invokes the jurisdiction of the federal courts under such circumstances or on such grounds as entitle the domestic corporation to invoke it. This view narrows the operation of the act to cases in which a foreign public utility corporation invokes the jurisdiction of the federal court which it could not invoke but for its nonresidence; that is to say, where its right of removal to the United States court, or its right to institute a suit therein, depends wholly or in part on nonresidence. So construed, the act cannot be held to discriminate against foreign corporations, or to deny them the equal protection of the laws, while within the jurisdiction of the state.

Neither the *Herndon case, supra,* nor any of the cases cited in the opinion therein, condemns the statutes involved on the ground that they deprive the foreign corporation of property without due process of law. There is some language in the concurring opinion of Justice White in *Western Union Tel. Co. v. Kansas,* 216 U. S. 1, 30 Sup. Ct. 190, which seems to show his view to be that the summary enforcement of the prohibition of the statute involved in that case would have that effect. In other opinions the courts have adverted to the fact that the foreign corporations have made investments in the state of a permanent nature, but these observations will be found to have reference to the question whether the foreign corporation was within the jurisdiction of the state, and therefore entitled to the equal protection of its laws.

On the record as it is now presented, we do not find any reason to alter our conclusion as announced in the original opinion, and the suggestion of error is *overruled.*